PROVO STY, J.
The relator is engaged in the business of catching fish for market. Relator alleges that it -has over $5,000 invested in the business, in powerboats and seining outfits; that it has contracts for the future delivery of fish to be caught; that it Las *523 many men employed; that it has obtained licenses from the commissioners for the protection of 'birds, game, and ■fish to fish in all the waters of the state during the year 1910; that for these licenses it has paid $133 ; that the value of .its property right in said business and licenses exceeds $7,500; that, although the supervision and control of fishing in the fresh waters of the state for commercial purposes is vested by Act No. 278 of 1908 in the said commissioners for the protection of birds, game, and fish, the police jury of the parish of Assumption has passed an ordinance .making it an offense to fish with a seine of more than 50 feet in the lakes and bayous of the parish; that the district attorney has caused the arrest of the -employes of relator for violation of said ordinance, and will continue to do unless restrained by injunction; .that, as the result of said criminal proceedings, relator has already suffered loss of $3,000 from its inability to carry out its contracts, loss of profits, and demoralization among its employés ; that the said Act No. 278 of 1908 has entirely superseded Act No. 60 of 1896 under the pretended authority of which the police jury has adopted said ordinance; and that said ordinance is, in consequence, null and void. Relator prays that the police jury and the district attorney be enjoined from carrying out the said ordinance.
The respondent judge refused to grant the injunction. Whereupon the relator filed in this court the present application for a writ of mandamus to compel the granting of the writ. In answer to the rule to show cause why the writ of mandamus should not be issued, the learned respondent judge assigns the following reasons:
“Into this honorable court now comes respondent in the above entitled and numbered cause, and for answer to the application of relators for writs of certiorari and mandamus avers:
' “That relators did apply to him for a preliminary order of injunction on or about the 11th day of May, 1910, whereby relators sought to prohibit and enjoin the police jury of the parish of Assumption and the district attorney of the Twenty-Seventh judicial district, acting in and for the parish of Assumption, from enforcing certain ordinances of said police jury and from prosecuting certain persons from violation of said ordinances, and that on or about the 13th day of May, in the exercise of the legal discretion vested in him, your respondent refused to sign or grant said order for the following reasons:
“That this government is based on three coordinate branches or departments, which, in order to subserve the ends for which they were instituted, must be entirely separate, free, and independent of one another, and, therefore, the judicial department should not, except for most weighty or grave reasons, interfere in the administration of the legislative or executive branches. In the case at bar, the judicial is asked to deny to the executive the right to appear in a court of justice to prosecute violations of a law enacted by the legislative department. The question primarily presented is not whether that law is good or bad or constitutional, but whether the executive or co-ordinate branch should be deprived of its inherent right to demand the enforcement of this law in the ordinary course of judicial proceedings — the court is asked to say to the executive, ‘you cannot appeal to the forum which the Constitution has designated to enforce this law, but you must come here, a different forum, and show that this law was properly enacted and is constitutional ; in the meanwhile, and pending this issue, you will have to remain, quiescent and not interfere in its violation.’ That is the sole question which relator’s demand presents for determination.
“The question is not a new one. It has frequently been passed upon. In the case of Lecourt v. Gaster, 49 La. Ann. 487 [21 South. 646], this honorable court said: ‘An injunction will not issue to restrain the execution of a criminal statute.’ In [Boin v. Town of Jennings] 107 La. 410 [31 South. 866], a recent case, your honors say: ‘The question of the legality and constitutionality of a municipal ordinance, in the nature of a police regulation enforceable by fine and imprisonment, should be left to the court in and to the occasion upon which the attempt is made to enforce it; the remedy by appeal to this court being in such case open to the party as against whom the attempt is made. An injunction to restrain the enforcement of such an ordinance will not lie.’ See, also [Levy v. Shreveport] 27 La. Ann. 620; [Mathews v. Town of Farmerville] 121 La. 313 [46 South. 339]; [State ex rel. Walker v. Judge] 39 La. Ann. 135 [1 South. 437]; 22 Cyc. 902. That the ordinance sought to be enjoined is a police regulation enforceable by fine and imprisonment cannot be gainsaid. The power to protect and regulate game and fish is within the police power of the state, and ordinances framed there *525 under are police regulations. 19 Cyc. 1006; Black’s Constitutional Law, § 154; [In re Schwartz] 119 La. 290 [44 South. 20, 121 Am. St. Rep. 516].
“But, say relators, granting the correctness of the foregoing principles which are imbedded in the Jurisprudence, that same jurisprudence has for good reasons made an exception thereto. When a municipality enacts an ordinance which is illegal, and the enforcement of which will have the effect of depriving a person of property rights or vested rights, the execution thereof may be enjoined by a court of equity because the person has no other adequate remedy. These ordinances are illegal, and, unless the police jury of Assumption and the district attorney are prohibited from enforcing them, we have no adequate remedy, and we are being deprived of a property right which we swear is worth $7,500. They cite [Baseball & Amusement Co. v. New Orleans] 118 La. 232 [42 South. 784; L’Hote v. New Orleans] 51 La. Ann. 93 [24 South. 608, 44 L. R. A. 90],
“Now it must be borne in mind that no person has the inherent right to fish in the public waters of the state. These waters are public domain, and no person, regardless of any license or permission, can lawfully claim either an exclusive or a natural or a proprietary right to fish in these waters as long as the ownership is vested in the state. A person may under legal regulations obtain the privilege of fishing, but the permission of exercising this privilege cannot form the basis of a contract. Relators aver that they have paid $45 for each of several licenses. It would not, in my opinion, matter if they had paid $4,500, for the reason that section 10 of Act No. 121 of 1906, under which they claim the license to have issued, does not authorize the sale of a license, but only authorizes the issuance of a free, written permission, which is bound to be revocable and cannot be the basis of a contract vesting property rights in the relators.
“The state may become bound by a contract, in the same manner that ordinary persons may become bound, when it has received a consideration or benefits proportioned to those it confers; but a fishing permit which, under the very terms of the law, may be given without any right on the paz't of the state agency to charge for the .same, can certainly not be assimilated to an agreement conferring vested rights or creating an estoppel en pais.
“A license or permit granted under a police regulation is not a contract, and it cannot give rise to vested or proprietary rights. [State v. Isabel] 40 La. Ann. 340 [4 South. 1; State v. New Orleans Debenture Redemption Co.] 51 La. Ann. 1840 [26 South. 586; State v. Kohnke] 109 La. 842 [33 South. 793]; Cooley’s Constitutional Limitations (6th Ed.) pp. 341-741; [State v. Bott] 31 La. Ann. 664 [33 Am. Rep. 224]; 25 Cyc. 625; [Voight v. Excise Commissioners of Newark, 59 N. J. Law, 358, 36 Atl. 686] 37 L. R. A. 292; [Levy v. Kansas City, 74 Kan. 861] 86 Pac. 149.
“A license cannot operate as a. bar against decreeing the illegality of the charter of a corporation. [State v. New Orleans Debenture Redemption Co.] 51 La. Ann. 1840 [26 South. 586]. The state is not precluded from revoking a statute relating to a public subject within the domain of the general legislative power and involving public rights and the public welfare. No contract rights can arise in such case. [State v. Kohnke] 109 La. 842 [33 South. 793].
“An injunction will only lie against the enforcement of a municipal ordinance in the nature of a police regulation, where vested or proprietary rights may be divested as a result of the enforcement. [Baseball & Amusement Co. v. New Orleans] 118 La. 232 [42 South. 784; L’Hote v. New Orleans] 51 La. Ann. 93 [24 South. 608, 44 L. R. A. 90].
“In Baseball & Amusement Co. v. New Orleans, 118 La. 232 [42 South. 784], your honors quote approvingly from High on Injunction on this subject, and it is to be noted that the passage quoted specifically says: ‘But in such case its (equity court) interference is founded solely upon the ground of injury to property and the necessity of preserving property rights; and, where such rights are not clearly involved, the relief will be denied.’
“It is my opinion that relators have no vested or property rights involved in this matter. True, they allege that they have, but that is a conclusion of law and fact with which I cannot agree, and, if they have no such right, then they do not come within the exception that police regulations may be enjoined when their enforcement results in the deprivation of rights of property.
“And, therefore, I do not believe that relators are entitled to test the legality of the ordinances adopted by the police jury of the parish of Assumption, in the manner proposed by them, for the reason that relators have no proprietary right to the fish in Lake Verret. The petition of relators does not show that Lake Verret in Assumption is the only 'body of water in which they can fish; nor that the property which they bought as a fishing outfit was bought solely for the purpose of fishing in that particular body of water, and that it could not be used elsewhere; -nor have the relators any exclusive right to fish in that lake, and it must be presumed that, pending the prosecutions of their employés, for violation of the parish ordinance, they can profitably pursue their business in other waters.
“I do not believe that prosecutions under the ordinances in question interfere with any vested or property rights of relators, and, if the ordinances are illegal and unconstitutional, the proper time and mode for testing this issue is when the accused are brought for trial in the court exercising criminal jurisdiction. Eor this reason I have refrained from discussing the legality of the ordinances under attack.
“I submit further that the order of injunction prayed for, being for causes enumerated in article 303, ‘O. P., the granting of the same was a matter entirely within the legal discretion of *527 respondent. [State v. Judge] 41 La. Ann. 951 [6 South. 721; State v. Sommerville] 110 La. 956 [34 South. 953; Hanson v. Policy Jury] 116 La. 1080 [41 South. 321; Murat v. New Orleans] 119 La. 514 [44 South. 279]. Respondent further submits that the writs applied for should not issue unless this honorable court should come to the conclusion that relators had an absolute statutory right to the injunction prayed for ([Manion v. Board of Directors] 119 La. 880 [44 South. 515]) ; that a writ of mandamus should not be granted to compel respondent to perform a discretionary act ([State v. King] 43 La. Ann. 826 [9 South. 640; Citizens’ Bank v. Webre] 44 La. Ann. 1081 [11 South. 706; State v. Rightor] 38 La. Ann. 916; [State v. St. Paul] 110 La. 722 [34 South. 750]); and that a writ of mandamus will only issue to compel the performance of a ministerial act ([State v. King] 43 La. Ann. 826 [9 South. 640]).
“The issues involved in relator’s petition for injunction are of great importance to the people of the parish of Assumption and affect the interest of a large number of persons, besides the pecuniary interest of the relators. Appreciating the gravity and seriousness of this controversy, I gave the whole matter ample study and consideration and have sought, in the exercise of the discretion vested in me by law, to reach a conclusion sanctioned by the jurisprudence of Louisiana, and which will promote the orderly administration of justice. If I have erred in this conclusion, it was not from want of diligence, nor from lack of study and investigation, but purely from a misapplication of the law and jurisprudence on this subject.
“I respectfully submit the whole matter for your consideration, ready and willing to do whatever this honorable court in its wisdom may deem just and proper.”
We do not understand the learned respondent judge as questioning here that equity may interfere in a proper case to protect property rights,against purely vexatious criminal proceedings, but as holding simply that relator does not present a case calling for the exercise of that extraordinary jurisdiction; it not appearing that relator has a proprietary right in the waters of the lakes and bayous of Assumption parish, or that relat- or’s fishing outfit could not be utilized in other waters, and relator’s contracts fulfilled in that way.
The rule to show cause herein is, therefore, recalled, and the application of the relator is dismissed, with costs.