(124 So. 151)

No. 30237.

GODFREY et al. v. RAY, Superintendent of Police, et al.

In re RAY, Superintendent of Police.

Sept. 23, 1929.

Bertrand I. Cahn, City Atty., and Francis P. Burns, Asst. City Atty., both of New Orleans (Joseph W. Carroll, of New Orleans, of counsel), for relator.

Finnorn, Flanagan & Todd, of New Orleans, for respondents.

O'NIELL, C. J. This suit was brought by one Edward H. Mills and 25 coplaintiffs for an injunction to prevent the police officers of the city of New Orleans from arresting Mills on the charge of violating Ordinance No. 2346, Commission Council Series, known as the jitney ordinance. The ordinance regulates the business of carrying passengers for fares in vehicles other than street cars, and requires an indemnity bond of every person engaged in the business of carrying passengers over indicated routes and for an uniform fare in vehicles operated on rails or otherwise. The plaintiffs alleged that Mills was engaged in carrying passengers in his automobile during the present street car strike in New Orleans, but that he was not violating the so-called jitney ordinance, by failing to give an indemnity bond, because he was employed by a labor organization, namely, Crescent City Lodge No. 37, International Brotherhood of Boilermakers, at a salary of $100 per month, to transport passengers free of charge, and that he charged no fares, accepted no money or other consideration or donation, and permitted no one to leave money or any other consideration with him or in his automobile. The plaintiffs alleged that they feared that the police officers would arrest Mills and charge him with violating the jitney ordinance because of his transporting passengers as aforesaid. They alleged that the 25 other plaintiffs, other than Mills, were residents of the city, who rode daily to and from their places of business or employment, in automobiles operated by persons who charged no fares and accepted no consideration or gratuity, and that, if the persons so operating automobiles were arrested for alleged violations of the jitney ordinance, they, the 25 plaintiffs, other than Mills, would be deprived of the transportation facilities afforded them by such automobiles, as the only safe means of transportation, and be compelled to ride in the street cars, which they alleged were dangerous and unsatisfactory during the street car strike; and that, if they were deprived of the means of transportation afforded them by the free automobile service, they would lose their employment, which was their only means of support. They alleged that the superintendent of police and his subordinates were making wholesale and unjustifiable arrests of the drivers of such automobiles; that many automobiles, lawfully operated, in which some of the plaintiffs were riding, had been stopped by the police officers, and the drivers arrested and taken to jail, without just cause; and that the automobile operated by Mills and owned by his employer had been stopped repeatedly, and would be stopped again by the police officers, without justification, unless an injunction should issue to prevent it. They alleged that the superintendent of police had instructed his subordinates to arrest persons carrying passengers in their automobiles, whether for compensation or free of charge, on the pretext that they were violating the jitney ordinance; that the superintendent of police had

instructed his subordinates to arrest such drivers of automobiles for blocking traffic and disturbing the peace, regardless of whether they were blocking traffic or disturbing the peace, in cases where there was no appearance or color of violation of the jitney ordinance; and that such orders and instructions of the superintendent of police to his subordinates were given for the avowed purpose of prohibiting the transportation of passengers in automobiles on the streets of the city. They averred that the superintendent of police and his subordinates had arrested hundreds of drivers of automobiles, charging most of them with violations of Ordinance No. 2346, since the aforesaid orders of the superintendent were given; that only five of the persons so charged had been convicted and nearly a hundred acquitted; that many other drivers of automobiles had been arrested without just cause and under various pretexts, and put into jail, only to be released without trial, or summarily discharged by the proper magistrate when tried on some frivolous complaint; and that, for the avowed purpose of preventing the operating of automobiles by persons who were not violating any law or ordinance, the superintendent of police had revoked the parole power of the police officers, in order that persons arrested on charges of violating the jitney ordinance might be forced to remain in jail.

One of the judges of the civil district court, to whom the petition was presented, issued a rule on the superintendent of police to show cause why a writ of injunction against him and the other police officers should not be granted, and, at the same time, the judge granted a temporary restraining order, forbidding the policemen to make an arrest unless on a warrant or upon probable cause for believing that a penal ordinance or statute was being violated.

The superintendent of police excepted to the jurisdiction of the civil district court, on the ground that the court, having no jurisdiction in criminal cases, was without authority to interfere with the enforcement of the criminal laws or penal ordinances by the officers who were charged with the duty of enforcing such laws and ordinances—especially in a case like this, where it was not denied that the ordinance which was being enforced was valid, the only complaint being the averment that the facts of the plaintiffs' case did not constitute a violation of the ordinance. The judge of the civil district court overruled the plea to the jurisdiction of the court; whereupon the superintendent of police obtained from this court a writ of certiorari and a rule upon the judge of the civil district court, and the plaintiffs in the case, to show cause why the judge of the civil district court should not be prohibited from exercising jurisdiction in the case, and why his temporary restraining order should not be rescinded and the suit dismissed.

The temporary restraining order was one which the police officers had no cause to complain of, for it was nothing more than a pronouncement of the law that the officers should not arrest any one except on authority of a warrant or upon probable cause for believing that a criminal statute or penal ordinance is being violated. It is not to be presumed that the police officers intended to make an arrest without a warrant and without probable cause for believing that a criminal statute or penal ordinance was being violated.

The petition for injunction in this case is a harsh criticism of the superintendent of police and a severe accusation that he and his subordinates are ruthless in their method of enforcing the so-called jitney ordinance; but the petition makes no specification in that re-

spect that takes this case out of the general rule that courts of equity, having jurisdiction in civil matters only, have no authority to prevent by injunction the enforcement of the criminal laws of the state or the penal ordinances of a municipality. It is not disputed by the plaintiffs that the so-called jitney ordinance is valid and ought to. be enforced in every instance where any police officer has probable cause for believing that the ordinance is being violated. The only allegation tending to justify the plaintiffs' complaint is that one of them, Edward H. Mills, and other drivers of automobiles in which the 25 other plaintiffs are accustomed to riding to and from their places of business or employment, are operating their cars in a way which is not violative of the jitney ordinance, and that, notwithstanding their innocence, they are threatened with arrest on the charge of violating the ordinance. The only question that would be presented, therefore, if Mills or any other of the automobile drivers referred to should be arrested and charged with a violation of the jitney ordinance, would be a question of fact, on which would depend the guilt or innocence of the party accused. The only tribunal that has jurisdiction to decide questions of fact determining the guilt or innocence of a person accused of violating a criminal statute or penal ordinance is the tribunal which is invested with jurisdiction in criminal cases and before which the party accused is called to answer to the charge. In accusations of felonies, the questions of fact relating to the question of guilt or innocence are decided exclusively and finally by a jury; and in accusations of misdemeanors or minor offenses the questions of fact relating to the question of guilt or innocence are determined exclusively and finally by the judges having jurisdiction to try such cases.

The ruling made by this court in the case of Le Blanc et al. v. City of New Orleans, 138 La. 243, 70 So. 212, is decisive of the present case. In that case the plaintiffs brought suit in the civil district court for an injunction, and alleged that they were engaged in a legitimate business in New Orleans, namely, the transportation of passengers for fare in automobiles, and had paid their state and municipal licenses; that Le Blanc had been charged in the recorder's court with violating the so-called jitney ordinance, being Ordinance 2346, Commission Council Series; that the ordinance was, for reasons stated in the petition, "unconstitutional, confiscatory, illegal, null and void"; that the financial condition of the city was such as to make it impossible for the plaintiffs to obtain compensation in damages for the unwarranted prosecution; and that, therefore, the injury which they would suffer would be irreparable. The city filed an exception to the jurisdiction of the court, which was overruled; and the city then brought the matter before this court on writs of certiorari, prohibition and mandamus—as the present case is before us. The ruling was that the civil district court was without jurisdiction to issue an injunction. The then Chief Justice, for the court, said:

"The Constitution and statutes of Louisiana confer all jurisdiction, original, appellate, and supervisory, with respect to prosecutions under penal ordinances of the City of New Orleans, upon the recorders' courts, the criminal district court, and the Supreme Court, and confer jurisdiction on the civil district court only as to controversies affecting civil and property rights. But cases arise where the respective jurisdictions appear to conflict, and the law appears to be silent as to the line between them, as where prosecutions under such ordinances alleged to be unconstitutional or illegal are said to operate as invasions of property rights, and in such cases

the judge of the civil district court, being bound to decide according to equity, as defined by article 21 of the Civil Code, may be aided by the precedents of the courts of equity elsewhere established, according to which he may grant an injunction to restrain a prosecution, or threatened prosecution, under an illegal ordinance, until the alleged invasion of property rights is inquired into. But in such case no injunction should be granted unless there be found three concurring conditions, to-wit, the invasion of a property right must be clearly shown, the unconstitutionality or illegality of the ordinance must be manifest, and the judge must be satisfied that the applicant is threatened with irreparable injury, against which the law, as administered in the courts vested with jurisdiction of the prosecution, affords no adequate remedy. If either of these conditions is lacking, the civil district court is without jurisdiction to issue the writ.

"The streets of the cities and towns in Louisiana, being among the things that are 'public,' and 'for the common use,' no individual can have a property right in such use for the purposes of his private business, unless (generally speaking), that business being in the nature of a public service, utility, or convenience, such as would authorize the grant, the right has been granted by the state, which alone has the power to make or authorize it, or by the particular city or town to which that power has been delegated, and in such case the power can be exercised only in accordance with the conditions of the grant; that is to say, an individual seeking, but not possessing, a grant of that kind, may accept the grant, with the conditions imposed by the offer, in which case he becomes bound by the conditions, or he may refuse to accept the conditions, in which case there is no grant; but without the grant so offered, or some oth-

er grant, he can never acquire the right to make the street his place of business and its use the main instrumentality in the conduct of that business. Whether, under any circumstances, an individual can compel a municipal corporation to make a grant of such right, with conditions satisfactory to himself, and unsatisfactory to the corporation, is a question that is not involved in this inquiry.

"The legislative charter of the City of New Orleans specifies certain businesses and matters of contract for the purposes of which the city may grant the use of the streets, but the business in which plaintiffs are engaged is not among them. That business consists of the carrying of passengers for fares, in vehicles, called 'jitneys,' and plaintiffs complain that their 'constitutional right' to use the streets of New Orleans for its purposes is invaded by a penal ordinance imposing conditions that are arbitrary and unreasonable, and with which they are unable to comply. But the complaint rests upon an erroneous conclusion of law, since the Constitution confers no such right, and, on the other hand, that instrument and the law vest the power to regulate the use of the streets for the benefit of the public in the electors of the City of New Orleans and the public officers chosen by them. Plaintiffs' complaint, therefore, discloses no property right which is threatened with invasion, and no interest in the operation of the ordinance complained of which gives him a standing in court to attack it or obstruct it. Hence it is immaterial for the purposes of this suit whether the law, as administered in the courts vested with jurisdiction of prosecutions under said ordinance, affords an adequate remedy for the protection of such interest, or whether the ordinance be valid or invalid; and hence, also, the civil district court was without jurisdiction to grant the injunction."

At the end of the opinion in the Le Blanc Case, 138 La. page 278, 70 So. page 224, the court said:

"We cite the foregoing [Wade v. Nunnelly, 19 Tex. Civ. App. [256] 255, 46 S. W. 668] in support of the proposition that, whether the ordinance which the plaintiffs herein have attacked be legal or illegal, they have disclosed no property right which it invades."

■■ In the present case, the complaint is not that the ordinance is unconstitutional or illegal, but that it is not applicable to the plaintiffs' case, which is the same as to say that there is no law or ordinance which would justify an arrest of Edward H. Mills, or the other automobile drivers referred to, for transporting passengers free of charge. It may be conceded, for the sake of argument, that a case might arise in which the threatened destruction of a property right might be deemed of so much more importance than the possibility of a violation of a penal statute or ordinance that a court of equity might be warranted in interfering to preserve the property right, even though the statute or ordinance under which the arresting officer assumes authority to make the arrest is admitted to be valid. But this is not such a case, for there is clearly no such property right claimed in this case. The right of a driver of an automobile to use the streets of a city is subject to such valid police regulations as the municipality sees fit to enact. Therefore, it is a begging of the question for the plaintiffs to claim that Edward H. Mills and the other automobile drivers referred to have a property right in the use of the streets for the transportation of passengers, on the ground that the method of transportation is not violative of any law or ordinance. The right of Mills, and of the other automobile drivers referred to, to use the streets for the transportation of passengers, depends upon whether they are conforming with or violating the law in that respect; and that is a question of fact, on which depends their guilt or innocence, and which should be determined only by the tribunal before which they will be called to answer if they are arrested on a charge of violating any penal law or ordinance on the subject. As the Court of Civil Appeals of Texas said in Davis v. City of Houston, 264 S. W. 625:

"Passengers using jitneys acquire no vested property right in such method of transportation, entitling them to enjoin the City from discontinuing granting jitney licenses, and an ordinance prohibiting the use of jitneys of certain carrying capacity on city streets did not invade their property rights."

The ruling in the Le Blanc Case was merely an affirmance of the jurisprudence on the subject. In State ex rel. City of New Orleans v. Theard, Judge, 48 La. Ann. 1448, 21 So. 28, a benevolent association, alleging that Act 18 of 1886, forbidding the sale of goods on Sunday, did not apply to the sale of beer and refreshments at a picnic or festival, which the association proposed to hold, obtained from the civil district court an injunction, forbidding the mayor and police officers from interfering with the sale of beer or refreshments at the festival. Thereafter the judge issued a rule on the defendants to show cause why they should not be punished for contempt for violating the injunction, and the defendants obtained writs of certiorari and prohibition from the Supreme Court. Maintaining that the civil district court had not jurisdiction to issue the injunction, and that the contempt proceedings were therefore null, the court said:

"Act No. 18 of 1886 is a criminal statute. The duty was imposed upon relators to see that the statute was executed. It was their duty to arrest all offenders against that stat-

ute. \* \* \* But the respondent judge says the law does not apply to the plaintiff in injunction. This is placing an interpretation upon a criminal statute that is within the jurisdiction of the Criminal Court.

"In the case of Hottinger v. City of New Orleans, 42 La. Ann. 630, 8 So. 575, it was said the courts of this State have no power to issue an injunction to prevent a municipal corporation from enforcing, by authorized judicial process, its police ordinances, penal in their nature, enacted for the promotion of the public health.

"Much stronger, therefore, is the reason that no court can enjoin the execution of a criminal law of the State, or the officers, upon whom devolves the duty, from enforcing obedience to the law.

"The District Judge had no jurisdiction of the case, no right or power to issue the injunction, and, therefore, no power to issue the rule for contempt for violating the order."

See, also, Lecourt v. Gaster, Superintendent of Police, 49 La. Ann. 487, 21 So. 646; Boin v. Town of Jennings, 107 La. 410, 31 So. 866; Sennette v. Police Jury, 129 La. 728, 56 So. 653; State ex rel. Tranchina v. City of New Orleans, 141 La. 788, 75 So. 683; Ex parte Sawyer, 124 U. S. 200, 8 S. Ct. 482, 31 L. Ed. 402; Shuman v. Gilbert, Chief of Police, 229 Mass. 225, 118 N. E. 254, L. R. A. 1918C, 135, Ann. Cas. 1918E, 793; Sullivan v. San Francisco Gas & Electric Co., 148 Cal. 368, 83 P. 156, 3 L. R. A. (N. S.) 401, 7 Ann. Cas. 574; Davis v. American Society, 75 N. Y. 368.

The rule issued by this court, directing the judge of the civil district court and the plaintiffs in this injunction suit to show cause why the relief prayed for by the relator, superintendent of police, should not be granted, is now made peremptory; and it is accordingly ordered that his plea to the jurisdiction be sustained and the injunction suit dismissed at the cost of the plaintiffs therein.