111 So.2d 505

Mark P. BANJAVICH

v.

LOUISIANA LICENSING BOARD FOR
MARINE DIVERS et al.

Edward L. TAYLOR

v.

LOUISIANA LICENSING BOARD FOR
MARINE DIVERS et al.

No. 44475.

April 27, 1959.

Lemle & Kelleher, Murphy Moss, New Orleans, for plaintiffs, petitioners.

Richard M. Mathews, New Orleans, for defendants.

McCALEB, Justice.

These suits, which reach us on writ of certiorari with other cases involving persons similarly situated,[1] present for decision the constitutionality of Act 196 of 1958, by which the Legislature has undertaken the regulation of marine diving as an occupation. The plaintiffs herein, Mark P. Banjavich and Edward L. Taylor, are residents of Louisiana and have been engaged in marine diving for over ten years. Part of their experience was gained in the United States Navy and, since their separation from the service, they have engaged in commercial marine diving as a means of livelihood. They own certain diving equipment and, in pursuit of their business, are available for employment by firms requiring the use of specialized services in salvage work or other enterprises involving underwater operations, such as offshore oil explorations.

After the effective date of the Act and the appointment to and qualification of the personnel of the defendant Licensing Board created thereunder, plaintiffs made application for licenses as master marine divers. Their applications were denied and, in due course, they brought these suits against the Board and the individuals composing it, assailing the constitutionality of the legislation on various grounds specifically set forth in their petitions and, alleging that

1. Veverica Marine Divers, Inc. v. Louisiana Licensing Board for Marine Divers, 237 La. 501, 111 So.2d 517; Daspit v. Louisiana Licensing Board for Marine Divers, 237 La. 502, 111 So.2d 517 and Inman v. Louisiana Licensing Board for Marine Divers, 237 La. 503, 111 So.2d 518.

they would suffer immediate and irreparable injury should the Act be enforced, prayed for injunctive relief.

On the showing made, the trial judge issued temporary restraining orders, together with a rule nisi for the defendants (the Board and the individual members thereof) to show cause why a preliminary injunction should not be granted.

Thereafter, defendants appeared and moved to dissolve the temporary restraining orders, alleging that the Court was without jurisdiction and, further, that the petitions showed no right or cause of action. These exceptions were apparently referred to the merits of the cases as they were ultimately disposed of by the judge subsequent to the hearing on plaintiffs' application for a preliminary injunction.

In his written reasons following the hearing of the rule to show cause, the judge held that he had jurisdiction of the case because plaintiffs had a property right to enforce which was cognizable in the civil district court and also overruled the exceptions of no right or cause of action as being without merit. However, in considering the merits of the rule, the judge stated that, since the statute is a regulatory measure containing penal provisions, injunctive relief could not be granted plaintiffs under the rulings of this court (Le Blanc v. City of New Orleans, 138 La. 243, 70 So. 212; Godfrey v. Ray, 169 La. 77, 124 So. 151

and Olan Mills, Inc., of Tennessee v. City of Bogalusa, 225 La. 648, 73 So.2d 791) unless they were able to show (1) an invasion of their property rights; (2) that the statute was manifestly unconstitutional or illegal and (3) that they were threatened with irreparable injury against which the law, as administered by the criminal courts, afforded no adequate remedy. And, being of the opinion that plaintiffs have no property rights in the business of marine diving because the diving services rendered by them are performed in and beneath the navigable waters of the State, or within the public domain, it was concluded that the relief sought could not be granted. In support of this ruling, the judge cited the Olan Mills and Le Blanc cases and Louisiana Oyster & Fish Co. v. Police Jury, 126 La. 522, 52 So. 685 and, in accordance therewith, recalled the temporary restraining order and denied the rule nisi for a preliminary injunction. On plaintiffs' application, a writ of certiorari was granted and the matter has been argued and submitted for our decision.

Preliminarily, it is well to set forth the substance of the legislation in contest. As indicated, Act 196 of 1958 has for its purpose the regulation of the occupation of commercial marine diving and has been incorporated in the Revised Statutes as Sections 2251 through 2264 of Title 37, which embraces all the regulatory statutes affect-

ing business pursuits under the heading "Professions and Occupations".

A licensing Board is created and established by Section 1 of the law, which provides for the appointment by the Governor of five members, each of whom shall be at least thirty years of age, residents of the State for five successive years preceding their appointments and shall have had at least ten years experience as professional marine divers, except that the first members of the Board shall be issued licenses as master marine divers by virtue of their appointments.

Section 2 provides for a bond to be furnished by the Secretary-Treasurer of the Board and Section 3 sets forth the general authority of the Board to carry out the purposes of the Act and to make rules and regulations for its proper administration. Section 4 deals with meetings of the Board; Section 5 provides for the accounting of its funds by the Secretary-Treasurer, his keeping of records and roster of the licensed divers and the submission by him of reports to the Governor; Section 6 provides that the Secretary-Treasurer shall open a bank account in a bank in the City of New Orleans, where the funds of the Board shall be deposited.

Section 7 defines a marine diver or tender to be any person, firm, partnership, etc., engaging in any commercial activity for the construction, demolition, salvage, repair, etc. of equipment, machinery, installations or other property in or below the inland and offshore waters of Louisiana, from the bottoms or beds thereof and the surface of said waters.

Section 8 declares that no person shall be engaged in commercial marine diving in this State unless he has paid the fees and been issued a license by the Board, as provided in the Act.

Paragraph B(1) of Section 8 provides that an apprentice marine diver shall be required, as a prerequisite to obtaining a license as such, to continuously work for a period of one year as a tender under supervision and employment " * * * by a Master Marine Diver licensed under the provisions of this Act, and shall qualify under such examinations as may be prescribed by the board."

Paragraph B(2) of Section 8 defines a Journeyman Marine Diver declaring that, as a prerequisite to obtaining a license as such, he shall be required to have continuously worked for a period of four years as an apprentice diver under the supervision and employment of a Master Marine Diver licensed under the provisions of the Act " * * * and shall qualify under such examinations as may be prescribed by the board."

Paragraph B(3) of Section 8 provides that a Master Marine Diver shall be required, as a prerequisite to obtaining a license as such, to have continuously worked for a period of five years as a qualified

Journeyman Marine Diver under supervision and employment of a Master Marine Diver licensed as such under the provisions of the Act " * * * and shall qualify under such examinations as may be prescribed by the board."

Paragraph B(4) of Section 8 sets forth the qualifications of a tender and the procedure for obtaining a license as such. The applicant is required to be a bona fide resident of the State, of good moral character, at least 18 years of age and recommended for licensing as a tender by a person licensed as a Master Marine Diver under the provisions of the Act who also has certified that the person so recommended will be employed by him in such capacity upon the granting of the requested license.

Paragraph (C) of Section 8 makes it a misdemeanor for anyone to engage in commercial marine diving without a license and provides that, on conviction, he may be fined in a sum not to exceed $2,000 or sentenced to six months in prison, or both.

Section 9 provides the yearly license fees to be paid by those who qualify under the Act; $75 for tenders; $150 for apprentice divers; $200 for journeymen divers and $250 for master marine divers.

Section 10 vests the Board with authority to conduct examinations. It declares: *"The board may conduct any examinations as well as require physical demonstrations of fitness that it deems* *necessary and proper* as a prerequisite to the issuance of any license under the provisions of this Act". (Emphasis ours.)

Section 11 provides that the Board may cause to issue in any competent court a writ of injunction enjoining any person from engaging in commercial marine diving or any of its classifications until such person obtains a license as required by the Act. It further declares that any court of competent jurisdiction " * * * shall issue a temporary restraining order upon a verified petition of this board and said restraining order shall issue without hearing, solely upon the verified allegations that the person sought to be enjoined is engaging in commercial marine diving without having obtained a license under the provisions of this Act."

Section 12 invests the Board with power to suspend or revoke for good cause any existing license.

Section 13 provides that no employer of marine divers shall engage in any negotiations or contract with any person unless he is a licensed master marine diver and that any violation by any such employer or his agent subjects him to punishment on conviction by a fine of not less than $1,000, nor more than $1,500, and imprisonment in the parish prison for not less than 30 days nor more than 3 months, or both.

Section 14 of the Act contains a "grandfather" clause. It declares that any bona

fide resident of Louisiana at the time of the passage of the law who has been actively engaged in the profession of commercial marine diving for ten years or more "* * * shall, of right, be entitled to apply for and receive a master marine divers' license without examination, upon payment of the license fees prescribed by this Act; * * *" provided that the application is made within three months after the effective date of the Act.

Section 15 is a severability clause and Section 16 repeals all laws in conflict with the Act.

 It is immediately perceived from a reading of the statute that its stringent provisions effectually put plaintiffs out of business for, although they have been engaged in marine diving for 12 years, a large portion of their experience was obtained during their service in the United States Navy and they have only operated their businesses as commercial ventures during the past few years. Hence, they neither qualify under the "grandfather" clause contained in the statute, as they have not been actively engaged in the profession of commercial marine diving for at least 10 years, nor are they eligible to be licensed as master marine divers under paragraph B(3) of Section 8 for the reason that they have not worked continuously for five years as qualified journeymen marine divers under supervision and employment of a master marine diver, licensed under the provisions of the Act. Indeed, since the provisions of paragraphs B(1), B(2) and B(3) of Section 8 make it incumbent upon the applicant for any sort of license as a marine diver to have worked continuously under the supervision and employment of a master marine diver licensed under the provisions of the Act, it would seem that this prerequisite eliminates all persons situated like plaintiffs from obtaining a license and effectually restricts the number of marine divers to the few persons who are able to qualify under the grandfather clause. The practical effect of the Act upon the occupation of marine diving is clearly borne out by the record. One of the defendant Board members, Alexander A. Asyak, stated under cross-examination that there were 50 or 75 good divers in Louisiana. But, according to the list of master licenses issued by the Board, there are only 11 persons, including the 5 members of the Board, who have been licensed as Master Marine Divers.

At the beginning of the trial on the rule for a preliminary injunction it was stipulated by opposing counsel that, soon after the defendant Board was constituted, a letter was sent by it to all known employers of marine divers advising them of the new law, suggesting that they familiarize themselves with its provisions and advising that the Board would enforce the Act as of January 1, 1959. It was further shown

by the testimony of a number of persons requiring marine diving services, who appeared on behalf of plaintiffs, that they would not employ any marine diver who was not licensed under the law.

Hence, it is plain that plaintiffs will suffer irreparable injury in the event of enforcement of the law for, as stated above, the Act puts them out of business. Furthermore, they have no adequate remedy at law for, unquestionably, the contracts they have made, and the employment they hope to obtain in the future, will be seriously jeopardized if they must wait until they are prosecuted in the criminal courts or until the Board seeks to enjoin them from violating the Act in order that they may question its constitutionality.

But, says counsel for the Board, it is not enough that these plaintiffs will suffer irreparable injury; it is also essential to confer jurisdiction on the civil district court to declare unconstitutional a penal law, or a regulatory law containing penal provisions, and to grant injunctive relief therefrom, that the complainants show that they have a property interest to protect. From this premise, he contends that the civil district court has no jurisdiction as plaintiffs have no property right to pursue the occupation regulated by the Act, since the work is performed in the beds and navigable waters of the rivers and streams of the State.

■ It is, of course, generally accepted as fundamental that a court of equity is without power to restrain the enforcement of a criminal statute. Ex parte Sawyer, 124 U.S. 200, 8 S.Ct. 482, 31 L.Ed. 402; Devron v. First Municipality, 4 La.Ann. 11; Levy & Co. v. City of Shreveport, 27 La.Ann. 620; City of New Orleans v. Becker, 31 La.Ann. 644; State v. Crozier, 50 La.Ann. 245, 23 So. 288; Boin v. Town of Jennings, 107 La. 410, 31 So. 866; Mathews v. Town of Farmerville, 121 La. 313, 46 So. 339; Louisiana Oyster & Fish Co. v. Police Jury, supra; Osborn v. City of Shreveport, 143 La. 932, 79 So. 542, 3 A.L.R. 955; Le Blanc v. City of New Orleans, supra and Godfrey v. Ray, supra.

Under the foregoing authorities, this rule has been extended to police regulations. However, a review of the jurisprudence reveals that it has not been inflexibly applied. Thus, as recognized in the Le Blanc, Godfrey and other cases, an exception exists when a property right may be destroyed or invaded by an unconstitutional or invalid statute or ordinance. In such matters, the strong arm of equity will provide relief. See Dobbins v. City of Los Angeles, 195 U.S. 223, 25 S.Ct. 18, 49 L.Ed. 169; L'Hote v. City of New Orleans, 51 La.Ann. 93, 24 So. 608, 44 L.R.A. 90; New Orleans Baseball & Amusement Co. v. City of New Orleans, 118 La. 228, 42 So. 784, 7 L.R.A., N.S., 1014, 118 Am.St.Rep. 366, 10 Ann. Cas. 757; Patout Bros. v. Mayor, etc. of

City of New Iberia, 138 La. 697, 70 So. 616[2] and Dumestre v. Police Jury, Parish of Jefferson, 195 La. 492, 197 So. 209.

■ These authorities provide the test which obtains in the matter at hand and, therefore, it is essential that plaintiffs show that the statute, if unconstitutional as claimed, invades or injuriously affects their property rights.

■■ That the pursuit of a legal occupation is a property right cannot be gainsaid. This court, buttressed by authorities of the Supreme Court of the United States, has recognized that the right to engage in a lawful calling is of such a basic nature that the curtailment of the right by oppressive or arbitrary legislation effectuates a deprivation of the complainant's property without due process and denies him equal protection of the law.

In Allgeyer v. State of Louisiana, 165 U.S. 578, 589, 17 S.Ct. 427, 431, 41 L.Ed. 832, 835, the Supreme Court of the United States, referring to the Fourteenth Amendment, declared:

"The 'liberty' mentioned in that amendment means, not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; * * *".

This Court, in State v. Chisesi, 187 La. 675, 175 So. 453, 457, after quoting the above language from the Allgeyer case, said:

"In the course of the opinion in the case cited, the court quoted with approval from the opinion of Mr. Justice Bradley, in Butchers' Union S. H. & L. S. Co. v. Crescent City L. S. L. & S. H. Co., 111 U.S. 746, 765, 4 S.Ct. 652, 28 L.Ed. 585, 590, to the effect that to deprive a person of his right to pursue his chosen calling deprives him of his liberty, *and to prevent his continuing in a lawful business or pursuit in which he is already engaged deprives him of his property, in the meaning of the Fourteenth Amendment.*" (Italics ours.)

See also Mongogna v. O'Dwyer, 204 La. 1030, 16 So.2d 829, 152 A.L.R. 162; 28 Am. Jur. Verbo "Injunctions", Sections 74 and 182; Truax v. Corrigan, 257 U.S. 312, 42

2. In that case, it was stated that Hottinger v. City of New Orleans, 42 La. Ann. 629, 8 So. 575, where the owner of a dairy was denied the right to enjoin the city from enforcing by criminal prosecution an ordinance making it unlawful to operate dairies within certain limits, " * * * must be held to have been overruled * * * " by the case of New Orleans Baseball & Amusement Co. v. City of New Orleans, supra, above cited.

S.Ct. 124, 66 L.Ed. 254; Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229 and Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468.

■ However, defense counsel professes that these authorities do not control this case and, as above stated, he asserts that plaintiffs have no property right in pursuing marine diving as an occupation because the services rendered by marine divers are performed upon navigable waters, which is undeniably public domain. The judge thought this contention well founded under the views expressed in the Le Blanc, Godfrey, Olan Mills and Louisiana Oyster & Fish Company cases.

While, at first blush, it might appear that the cited authorities support the view of the trial judge, a careful examination of each of these cases reveals that they do not govern the matter at hand.

The leading case on the subject is Le Blanc v. City of New Orleans. There plaintiffs, who were operating automobiles, known as "jitneys", in the transportation of passengers for a five cent fare in opposition to the New Orleans Railway & Light Company's efforts to break a strike of its street car employees' union, sought to enjoin the enforcement of an ordinance prohibiting the operations being conducted by them (and others similarly situated) on the public streets of New Orleans without the posting of a $5,000 indemnity bond for each vehicle so used. The plaintiffs were under penal charges before the Recorder's Court for violating this ordinance at the time they brought their suit for injunctive relief, and had demurred to the affidavit pleading the invalidity of the enactment.

After reviewing the prior jurisprudence, the Court concluded that the ordinance of the City was passed under its power to regulate the use of its streets and that, as plaintiffs had no inherent property right to conduct their "business" [3] on the streets of the City, the civil district court was without jurisdiction to issue an injunction restraining enforcement of the ordinance as exclusive jurisdiction had already vested in the criminal court.

We think this case is clearly distinguishable from the Le Blanc case. In that matter, the ordinance was enacted for the purpose of regulating the use of the public streets by persons transporting passengers for hire and the rationale of the Court's opinion is that equity may not interfere with such a police regulation, which was undoubtedly within the scope of the police power delegated to the City of New Orleans, since plaintiffs had no property right

3. It is well to bear in mind that plaintiffs' "business" was purely a temporary, makeshift enterprise, conducted by them to thwart the railway company's efforts to bring the union employees to terms by using imported strike breakers.

in the public streets for the conduct of their enterprise. But, here, the law under attack was not passed with the design of regulating the use of the navigable waters of the State. On the contrary, it was enacted solely and only for the purpose of regulating the business of marine diving as an occupation. The circumstance that marine divers perform their services in and upon the navigable waters of the State is merely an incident of the legislation and has no material relation to the underlying object of the law. To say, then, that there is no property right in engaging in this lawful occupation because of the *place* where the work is done would be unsound. It is the *right* to work (not the place of performance) that is the "liberty" protected by the Constitution. And liberty to work is "property". Allgeyer v. State, supra.

The Louisiana Oyster & Fish Company case provides an excellent example of the distinction to be drawn (anent the invasion of a property right) between laws, which regulate the use of public or common things, as defined by Articles 453 and 450 of the Civil Code, and those having for their purpose the regulation of a lawful business. There, the police jury of Assumption Parish passed a penal ordinance making it an offense to fish with a seine of more than fifty feet in length. The plaintiff, claiming that the ordinance was ultra vires in that the power to control the use of the fresh waters of the State for commercial purposes had been vested in the commissioners for the protection of birds, game and fish by Act 278 of 1908, alleged that, unless its enforcement was restrained, great damage to its business and irreparable injury would be sustained. But the Court affirmed the trial judge's action in denying plaintiff an injunction and applied the general rule that a civil court cannot restrain the execution of a penal law. In reaching this conclusion, the court recognized that equity may interfere to protect property rights against vexatious criminal proceedings but stated that plaintiff had no proprietary right to fish commercially in the waters of the lakes of Assumption Parish.

In this case, the statute was not designed to regulate the use of navigable streams, either for public enjoyment or for commerce. Hence, plaintiffs' proprietary interest in their business is totally unaffected by the fact that their work is performed on such waters.

Godfrey v. Ray has no real bearing on the question for decision here. That was a suit by one Mills and 25 other persons seeking an injunction to prevent police officers of the City of New Orleans from arresting Mills on the charge of violating the "jitney" ordinance involved in the Le Blanc case. The basis of the claim was that the jitney ordinance was inapplicable since Mills was transporting passengers

free of charge. There was no claim that the ordinance was unconstitutional or illegal and the Court properly held that Mills had an adequate remedy in the criminal courts in the event of his arrest for violating the law. The Court quoted at length from the Le Blanc decision, which would have been unquestionably decisive of the case, had any issue been raised that plaintiffs had a property right which was being invaded by the enforcement of the ordinance.

The Olan Mills decision, relied on by defense counsel, expresses the view reached by the majority of a divided court on original hearing. However, a rehearing was granted and, while the original decree was reinstated, the judgment on rehearing was based on an entirely different ground which is without pertinence to the question presented in this case. Hence, the views stated on the original hearing cannot be regarded as authority.

Apart from the above stated reasons which differentiate this case from the Le Blanc and Louisiana Oyster & Fish Company cases, there appears to be still another ground for concluding that the civil court is vested with jurisdiction to grant plaintiffs injunctive relief if Act 196 of 1958 is unconstitutional. Here, the statute confers procedural jurisdiction upon the district court.[4] Section 11 of the law provides that the Board may apply to a civil court for a writ of injunction enjoining any person from engaging in commercial marine diving or any of its classifications until such person obtains a license as required by the Act and it further declares that the court shall issue a temporary restraining order upon the verified petition of the Board.[5] Thus, since the Act would vest the civil district court with jurisdiction to restrain its violators, there would seem to be no just reason for the court to refuse jurisdiction when a person injuriously affected thereby claims that the law is

4. In reality, of course, the Legislature cannot confer jurisdiction on any court as the jurisdiction of our courts, civil, criminal, appellate and supervisory, is prescribed by Article 7 of the Constitution. The general rule that a court of equity may not issue injunctive process restraining the enforcement of criminal statutes is a jurisprudential procedural doctrine borrowed from the common law courts and is founded on two bases, (1) that equity will not interfere with the enforcement of legal process where there is an adequate remedy in another tribunal and (2) that, when one court becomes seized of jurisdiction (which is

usually the case when prosecutions are sought to be enjoined), it retains exclusive jurisdiction until the issue is finally determined.

However, when the Legislature itself provides a dual remedy of procedure, there is no reason why the courts should apply this general rule.

5. Obviously, this latter provision, making it mandatory for the court to issue an injunction, is unconstitutional as it operates as an unnecessary invasion of property rights and an unreasonable exercise of police power. See Mongogna v. O'Dwyer, 204 La. 1030, 16 So.2d 829, 152 A.L.R. 162.

violative of his constitutional rights. To hold otherwise, would be to say that it is only the Licensing Board which is given the choice of forums and those, who claim oppression, must wait for the Board to act before they may be heard. Such a result could not be countenanced.

Since we find that plaintiffs have a property right to protect and that enforcement of the law will cause them irreparable injury it remains, then, to consider whether the Act is unconstitutional.

Plaintiffs assail the validity of the statute on several grounds. It is alleged that the Act constitutes a discriminatory and improper exercise of the police power of the State in that it bears no real and substantial relation to the public health, safety, morals or general welfare; that it discriminates between persons similarly situated, conferring upon the Board arbitrary powers and, therefore, is violative of Section 2 of Article 1 of the State Constitution, depriving plaintiffs of due process of law and also constitutes a denial to them of due process and equal protection of the laws guaranteed by the Fourteenth Amendment of the Constitution of the United States. Additionally, it is contended that the Legis-

lature, in violation of Section 2 of Article 2 of the State Constitution, which provides for the separation of powers of the legislative, executive and judicial departments, has unlawfully delegated its lawmaking authority to the administrative Board created under the Act as there are no guideposts or standards erected by it from which the legislative will can be executed.

Other constitutional objections are asserted by plaintiffs which affect certain parts of the statute. But in view of the conclusions hereinafter set forth, we find it unnecessary to state or consider these contentions.

It takes no more than a casual reading of Act 196 of 1958, the substance of the Sections of which we have detailed at the beginning of this opinion, to make it perfectly evident that the law is violative of one or more of the constitutional provisions cited by plaintiffs.

In the first place, it is difficult to perceive that the business of commercial marine diving bears substantial relation to the public health, safety or general welfare.[6] The very nature of the enterprise produces only a private relationship, those pursuing the occupation having but little,

6. To justify the State in imposing its authority in behalf of the public, it must initially appear that the interests of the public generally, as distinguished from those of a particular class, require that the business be regulated; the lawmaker may not, under the guise of exercising its police power, arbitrarily interfere

with private business or impose unusual or unnecessary restrictions upon lawful occupations. City of Alexandria v. Hall, 171 La. 595, 131 So. 722; Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, 216 La. 148, 43 So. 2d 248, 14 A.L.R.2d 680.

if any, contact with the public in general, as their activities are limited to specialized employment by a small group consisting of salvage companies, marine surveyors, pipeline and oil and gas producing firms.[7]

Then, too, there appears to be no tangible reason for the requirement of the Act that an applicant for a master marine diver's license should have 10 years previous experience under various conditions of apprenticeship and, yet, under the "grandfather" clause a resident, who has been engaged as a master marine diver for 10 years is entitled, of right, to a license without taking an examination. Indeed, the whole scheme of the legislation exhibits that many of the statute's provisions are arbitrary, discriminatory and oppressive which, in the end result, may probably create a monopoly of the marine diving business for the benefit of a favored few.

▉ Nevertheless, since it is to be presumed that the Legislature must have acted only after a thorough investigation and upon a finding that the interest of the public required the legislation in question (see Board of Barber Examiners of Louisiana v. Parker, 190 La. 214, 182 So. 485), we need not rest our decision on the ground

that the statute constitutes an invalid regulation enacted under the guise of the police power, for we think that there is another insurmountable constitutional objection to the enactment which renders its operation nugatory.

▉ It is seen from a reading of Sections 8 and 10 of the law that the Board may prescribe examinations for all applicants " * * * that it deems necessary and proper" as a prerequisite for the issuing of any license thereunder and may also require the applicant to give physical demonstrations of fitness.. These provisions vest arbitrary powers, uncontrolled by any fixed rule or standard, it being left to the unrestricted judgment and discretion of the Board to say who is worthy or unworthy of the privilege of engaging in the business of marine diving. A similar provision was held to have rendered Act 176 of 1934 unconstitutional in State v. Chisesi, supra, where the Court said:

"Adverting to the other reason why the statute in question constitutes a denial of the equal protection of the laws, we find the books full of decisions to the effect that a state statute or municipal ordinance which undertakes to reg-

7. Compare the other occupations which have been subjected to regulation by the Legislature, contained in Title 37 of the Revised Statutes—accountants, architects, attorneys, barbers, cosmetic therapy, chiropodists, dentists, nurses, optometrists, obsteopaths, pharmacists, doctors, engineers, plumbers, veterinarians and watchmakers. It is fair to presume that these professions and occupations have substantial relation with the public in general and that their regulation in the public interest is a proper exercise of police power.

ulate a lawful business or occupation by conferring upon a designated officer, or commission, or board, the authority, within his or its judgment or discretion, to grant or to withhold a license or permit to engage in the business or occupation, and which does not prescribe a rule or standard to which all persons similarly situated may conform, constitutes a denial of the equal protection of the laws. The leading case on the subject, of course, is Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220. The Louisiana cases maintaining the principle are: State v. Mahner, 1891, 43 La.Ann. 496, 9 So. 480; State v. Dubarry, 1892, 44 La.Ann. 1117, 11 So. 718; State v. Kuntz, 1895, 47 La.Ann. 106, 16 So. 651; City of New Orleans v. Palmisano, 1920, 146 La. 518, 83 So. 789; City of Shreveport v. Herndon, 1925, 159 La. 113, 105 So. 244; State v. Carter, 1925, 159 La. 121, 105 So. 247; State ex rel. Dickson v. Harrison, 1926, 161 La. 218, 108 So. 421 and Bultman Mortuary Service, Inc. v. City of New Orleans, 1932, 174 La. 360, 140 So. 503." [187 La. 675, 175 So. 459.]

Moreover, it is patent that the delegation to the Board of discretionary powers to conduct any examination it deems necessary and proper, as a prerequisite to the issuance of a license, constitutes an unlawful delegation of legislative power to an administrative body which cannot be countenanced—for no guideposts or standards have been erected by the Legislature which will enable the Board to carry out its will. This Court has stricken down similar regulatory legislation on this basis in other cases. Suffice it here to refer to city of Baton Rouge v. Shilg, 198 La. 994, 5 So.2d 312 and our recent decisions in McCauley v. Albert E. Briede & Son, 231 La. 36, 90 So. 2d 78 and State v. Morrow, 231 La. 572, 92 So.2d 70.

Therefore, since the provision under which the Board is given authority to license applicants is patently unconstitutional, the statute, for all intents and purposes, is ineffective.

For the foregoing reasons, the writ of certiorari issued herein is made peremptory and it is now ordered that the defendants, Louisiana Licensing Board for Marine Divers, and its members, Eric W. Spitzkeit, Albert J. Frolich, Sam J. Bongiovanni, Norman Knudsen and Alexander A. Asyak, be restrained and enjoined from interfering with plaintiffs in the conduct of their business as marine divers or from doing any other acts which tend to prevent plaintiffs from freely exercising the right to engage in commercial marine diving or in any of its classifications. The defendants are to pay such costs as are properly chargeable against them under provisions of law.

PONDER, J., dissents with written reasons.

HAWTHORNE, Justice (dissenting).

I concur in the dissent by PONDER, J.

HAMITER, J., dissents for the reasons assigned by PONDER, J.

PONDER, Justice (dissenting).

I cannot agree with the majority opinion handed down in this case for the reason that the plaintiffs have no proprietary right to engage in the calling of marine diving in the public waters of this State. The statute regulating marine divers contains two penal clauses, viz: (1) making it a violation to engage in the occupation without having procured a license, punishable, upon conviction, by a fine in a sum not to exceed two thousand dollars or six months in prison, or both; (2) making it a violation for any awarding authority or its agents to employ or use any person in the performance of commercial diving activities, other than a duly licensed master marine diver, punishable, upon conviction, by a fine of not less than one thousand dollars .nor more than fifteen hundred dollars, or imprisonment for not less than thirty days nor more than three months, or both.

An injunction· is not authorized in my opinion in a case involving a statute containing a penal clause except where there is an actual or threatened loss of a property right, the unconstitutionality of the statute is manifest, and where there is irreparable injury for which there is no adequate remedy at law. , All three of these conditions must exist before a court is authorized to enjoin the enforcement of the statute. Devron v. First Municipality, 4 La.Ann. 11; Levy & Company v. City of Shreveport, 27 La.Ann. 620; City of New Orleans v. Becker, 31 La.Ann. 644; Hottinger v. City of New Orleans, 42 La.Ann. 629, 8 So. 575; State v. Crozier, 50 La.Ann. 245, 23 So. 288; Boin v. Town of Jennings, 107 La. 410, 31 So. 866; Mathews v. Town of Farmerville, 121 La. 313, 46 So. 339; Louisiana Oyster & Fish Co. v. Police Jury, 126 La. 522, 52 So. 685; Osborn v. City of Shreveport, 143 La. 932, 79 So. 542, 3 A.L. R. 955; Le Blanc v. City of New Orleans, 138 La. 243, 70 So. 212; Godfrey v. Ray, 169 La. 77, 124 So. 151.

In the case of Louisiana Oyster & Fish Co. v. Police Jury, supra, this Court held that no one engaged in any pursuit had a proprietary right in the use of the public waters of this State.

I am of the opinion that the conclusion reached in the majority opinion is contrary to the holdings in the aforementioned cases and indirectly overrules the holdings in these cases.

I respectfully dissent.