Leo J. Houle, Aplt.

*vs.*

Tondreau Brothers Company

AND

Aetna Casualty & Surety Co., Carrier

Leo J. Houle, Aplt.

*vs.*

Tondreau Brothers Company, Inc.

AND

Aetna Casualty & Surety Co., Carrier

Cumberland.  Opinion, October 4, 1952.

*Sherwood Aldrich,* for appellant.

*James R. Desmond,* for appellee.

SITTING: THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ. MURCHIE, C. J., did not sit.

FELLOWS, J.   These two cases heard together come to the Law Court on appeal by the petitioner (employee) from *pro forma* decrees of the Superior Court for Cumberland County affirming decrees of the Industrial Accident Commission. The Commission dismissed the two petitions, asking for award of compensation, for failure to sustain the burden of proof.   Each petition alleged a separate and distinct accident.   Both were heard together without objection.   The first accident was alleged in the first petition (filed with the Commission on January 10, 1952) as having taken place on January 18, 1951.   The second petition (filed with the Commission on January 29, 1952) alleged an accident on April 16, 1951.

Leo J. Houle, the petitioner, worked as a meat cutter in the employ of Tondreau Bros. Company at Brunswick, Maine.   His duties included care of meats, cutting meats, and waiting on customers.   He also hung meat on hooks as it was unloaded from trucks.   On January 18, 1951, he went into the refrigerator to get hooks, and on coming out slipped and fell down injuring his right foot.   He informed the manager that he must go to his home, and he went home where he bathed his right foot in hot water.   Two days after, Dr. Earle Richardson, when consulted, found the Achilles tendon "strained and some fibres possibly broken." Dr. Richardson strapped up his foot.   The petitioner was out of work for two and one-half days only, but stated that he had difficulty in walking.   Dr. Richardson offered no opinion that any subsequent disability was connected with the original injury.   On April 16, 1951, the employee Houle attempted to hang up a "chuck" of beef weighing 70 or 80 pounds, and the beef fell on the instep of his other (left) foot.   The foot swelled, and he put his left foot in hot water.

He did not go to a doctor but he told Louis Tondreau about it. He lost no time from his work because of the second accident.

On April 22, 1951, Houle consulted Dr. Morris E. Goldman, an orthopedic surgeon, about his right foot. He complained of pain in the right foot in the region of his ankle. X-rays were taken. He was given medication. On a later visit to the doctor, Houle told Dr. Goldman about pain in his other (left foot) and received Anacin pills to be taken for pain. It was not until August 1951 that Houle ceased to work as usual.

It appears, and is admitted, that Leo J. Houle had a congenital deformity in both his right and left foot. Dr. Goldman said "both feet were of a certain type that ultimately would give him trouble, in that they were the spastic everted —that is, turned out. By out, I mean the top of the foot is turned internally and the bottom of the foot is turned outwardly." Dr. Goldman said also, regarding any pain he may have had, that surgery would relieve. "I expected to relieve his pain to be sure, and I also expected to correct the existing deformities in both feet to avoid trouble later on." Dr. Goldman could not recall that Houle made any complaint of pain in his left foot. Dr. Goldman recommended surgery, however, to the left foot because of the deformity. Dr. Goldman found no evidence of any injury to either foot. "In the course of the examination, his feet were so deformed that I suggested to him, where his work required standing up a great deal, he should consider some form of surgery to his feet to avoid further trouble. He told me he would think it over and came back later on and asked me to arrange for surgery for him."

Dr. Goldman stated that he found no objective symptoms indicating any condition other than the "congenital spastic everted," and that he did not "clearly in my mind" have any

opinion that the alleged accident "accelerated the need for surgery."

The first petition for award of compensation filed by Leo J. Houle was dated January 9, 1952, and alleged that on January 18, 1951 he "slipped upon the floor of the meat room of Tondreau Bros. Company and fell down thereby spraining my right foot and ankle * * * from which I suffered intense pain, which continued until August 10, 1951, when I was unable to work longer and after which an operation on my right foot became necessary." The second petition for award of compensation filed by Leo J. Houle was dated January 21, 1952 and alleged that "the chuck of beef fell upon my left foot knocking me down * * * causing an injury to my left foot which resulted in great pain which became so severe that on August 10, 1951, I was unable to work and after which an operation was performed on my left foot. That to this date I have been unable to work because of said injury, since August 10, 1951." An answer was duly filed to each of the petitions denying all of the allegations.

The two foregoing petitions were heard together and the Commission, after full hearing, made a long, carefully written analysis of all medical and all other testimony applicable to each petition, and dismissed each petition for failure, on the part of the petitioner, to prove that he received injury by accident arising out of and in the course of the employment and that the medical attention and incapacity was due to the accidental injury.

The question presented to the Law Court on these two appeals is whether the Commission was in error in its dismissal of both (or either) of the petitions because of failure to sustain the burden of proof.

The Workmen's Compensation Act says: "If from the petition and answer there appear to be facts in dispute, the

commissioner shall then hear such witnesses as may be presented, or by agreement the claims of both parties as to such facts may be presented by affidavits. If the facts are not in dispute, the parties may file with the commission an agreed statement of facts for a ruling upon the law applicable thereto. From the evidence or statements thus furnished the commissioner shall in a summary manner decide the merits of the controversy. His decision, findings of fact and rulings of law, and any other matters pertinent to the questions so raised shall be filed in the office of the commission, and a copy thereof attested by the clerk of the commission mailed forthwith to all parties interested. His decision, in the absence of fraud upon all questions of fact shall be final."

At the hearing before the Industrial Accident Commission the petitioning employee was the moving party and upon him was the burden to prove the allegations in his petition and all elements necessary to support his claims for compensation, such as the employment, the accident arising out of and in the course of the employment, the resulting injury, and the causal connection between the condition which he alleges disabled him and the alleged accident. "Surmise, conjecture, guess, or speculation are not sufficient." *Westman's Case*, 118 Me. 133, 106 Atl. 532; *Hawkins* v. *Portland Gas Co.*, 141 Me. 288, 43 Atl. (2nd) 718; *Boyce's Case*, 146 Me. 335, 81 Atl. (2nd) 670; *McNiff* v. *Old Orchard*, 138 Me. 335.

Whether there is a disability due to injury is a question of fact. Whether there is a causal relation between injury and disability is also a question of fact. *Kilpinen's Case*, 133 Me. 183, 175 Atl. 314; *Baker's Case*, 143 Me. 103, 55 Atl. (2nd) 780.

It is the right and duty of the Commission, under the statute, to find the facts, and if the Commission has considered

all the competent evidence and there is competent evidence on which to base the decision, the decision is final. It is also final if the Commission decides there is a lack of probative evidence. Whether a claimant has sustained the burden of proof is the problem of the Commission. It is a question of fact which cannot be disturbed by this court. *Robitaille's Case,* 140 Me. 121; *Weliska's Case,* 125 Me. 147.

What constitutes proof, with relation to the evidence offered to establish the truth of a proposition, is often a most difficult question. It is that evidence which has the power to convince the mind of the existence of a fact, and thus produce belief. It is rarely an absolute demonstration like a mathematical proposition. Properly speaking, however, proof is the effect or result of evidence, while evidence is the medium of proof. In the ordinary affairs of life we cannot require demonstration because it is not consistent with the nature of common and usual subjects. Things or events established by competent and satisfactory evidence are said to be proved. Competent evidence is evidence that is fit and appropriate, such as the production of a writing that is subject to inquiry, or the testimony of a witness having the necessary knowledge of facts and circumstances. Satisfactory evidence is that competent evidence which satisfies an unprejudiced mind of the truth. The amount of competent and satisfactory evidence necessary to sustain the burden of proof can never be defined. It depends on circumstances and conditions. It may come from the testimony of one witness, or it may require many. The only legal test is its "sufficiency to satisfy the mind and the conscience of the trier of the facts." See Greenleaf on Evidence (6th Ed.) Volume 1, Pages 3-15; Bouvier's Law Dictionary (3d Ed.) "Proof,"; 20 Am. Jur. 134, 1043, Secs. 131, 1190.

> "The burden was upon the plaintiff to sustain the allegations of his writ by the weight of the evidence. His witnesses were far outnumbered by

those brought in by the defendant and contradicted in many of the material facts stated in their testimony, but they were believed by the jury. The weight of evidence is not a question of mathematics. One witness may be contradicted by several and yet his testimony may outweigh all of theirs. The question is what is to be believed, not how many witnesses have testified." *Shannon* v. *Dow*, 133 Me. 235 at 240.

Even if the testimony of a witness is not directly contradicted it does not make it conclusive and binding upon the trier of facts. It is not to be utterly disregarded and arbitrarily ignored without reason. It should be considered and weighed with the other evidence in the case. "The court is not required to put the stamp of verity upon it, merely because it is not directly contradicted by other testimony." *Mitchell* v. *Mitchell,* 136 Me. 406, 418.

The petitioner in this case strenuously contends that the Commission in dismissing his two petitions for award of compensation clearly disregarded evidence of probative force and that the decisions should therefore be set aside. The petitioner claimed and testified that he never suffered pain in either of his feet before these two accidents and that he worked at his job for twenty years. He also claims that he is "corroborated" by a fellow worker who testified that he never heard the petitioner complain of pain. The petitioner says that the foregoing evidence given by him proves the causal connection. He states in his brief that the pain from which he suffered in his feet was attributable to the injuries received by him in the two accidents, the operation performed was incidental and to ease the pain and that his "incapacity following the operation directly followed and resulted from the injuries received in the accidents and was therefore compensable."

The contentions of the petitioner are well stated in his brief and his views of the evidence are well expressed. Had

the evidence introduced by the petitioner "satisfied the mind and conscience" of the Commission, there would have been decisions in his favor, and this court would be obliged to say that there was evidence to support. The Commission, however, found the facts otherwise in the two cases, after careful consideration of all the evidence, and there is likewise competent evidence on which to base the two decisions.

These cases involve medical and surgical questions. There were no objective indications that the petitioner's pain (if there was pain) was caused by the accident, or either accident. The medical testimony was to the effect that these two minor accidents were not the cause of inability to work. These accidents may have aggravated the congenital condition as Dr. Goldman testified, but he stated "I do not know." There was evidence from the doctors to indicate that the petitioner's claims were *possibly* correct but no evidence from the doctors that they were *probably* correct.

Compensation cannot be awarded upon possibilities or evenly balanced chances, or upon a choice equally compatible with an accident and no accident. *McNiff* v. *Old Orchard,* 138 Me. 335; *Bertha Ferris' Case,* 132 Me. 31.

In each of the above named cases of Leo J. Houle v. Tondreau Bros. Company, the entry must therefore be

*Appeal dismissed.*

*Decree affirmed.*