PONDER, Justice.
The defendant, Irvin B. Morrow, who is engaged in the business of watch repairing in the City of New Orleans, was charged in a bill - of information in that he did “wilfully and unlawfully' engage in watch' *575 repairing for another for pay, without possessing a valid certificate of registration issued by the Board of Examiners in Watchmaking” and without displaying a certificate of registration. The defendant entered a plea of not guilty, demurred, and moved to quash the information on the ground that the statute under which he was charged was unconstitutional and more particularly Sections 1591 and 1599 of Title 37 of the LSA-Revised Statutes. His plea to the constitutionality of the statute is based on the ground that it violates Section 1 of the Fourteenth Amendment to the Federal Constitution and Article 1, Section 2; Article 3, Section 1; and Article 19, Section 14 of the Constitution of Louisiana-LSA. The lower court overruled the demurrer and the motion to quash, the defendant was tried, convicted and sentenced. On appeal, the Appellate Division, No. 1 of the Criminal District Court set aside the conviction and sentence and ordered the defendant discharged. Their judgment was based on the ground that the statute was unconstitutional, relying on the case of State ex rel. Whetsel v. Wood, 207 Old. 193, 248 P.2d 612, 34 A.L.R.2d 1321. The State has appealed.
The State takes the position that the holding in the Wood case is erroneous and relies on the case of State of Wisconsin v. Richard B. Easton, unreported decision tif the Circuit Court of Rock County, Wisconsin, decided September 26, 1951. The State also relies on a number of decisions of this Court to support its contention that the legislature may regulate and limit the exercise of legitimate businesses, trades, and occupations when such regulation or limitation is, in the opinion of the legislature, necessary, convenient, or desirable to protect or further the general welfare and that the business of watchmaking is subject to such regulation.
For the purpose of this decision, we may concede that the legislature was authorized to regulate the business of watchmaking but what gives us most concern is whether the statute as constituted is an unlawful delegation of power and whether the delegation of power is so broad as to permit the creation of an unlawful monopoly.
The pertinent provisions of the statute granting the Board of Examiners in Watchmaking powers to regulate the watchmaking business are as follows:
LSA-R.S. 37:1589:
“The board shall administer the provisions of this Chapter; shall have an official seal; and make rules and regulations for conducting examinations, and define the standards of workmanship and skill.
“The board may promulgate rules and regulations to carry out the intent of this Chapter and establish suitable wnd proper uniform apprenticeship regulations; it may also appoint clerks *577 and assistants necessary to the execution of board functions and fix their salaries; and retain legal counsel, horological or administration experts, if it finds it necessary.”
LSA-R.S. 37:1591:
“No person shall engage in watchmaking for profit or compensation of any kind, unless he possesses a certificate of registration issued by the Board.”
LRS-R.S. 37:1592:
“Applicants for certificates in watchmaking shall be of good character, at least nineteen years of age, and shall possess such general education, training and experience as the hoard, may determine.”
LSA-R'.S. 37:1600:
“Any person not under sixteen years of age, of good character, apprenticed to a registered watchmaker, in accord with the regulations of the board, may pursue the trade of watchmaking upon obtaining from the board a certificate of registration as an apprenticed watchmaker, which certificate shall be conspicuously displayed at all times in the place of employment of the apprentice. Apprenticed watchmakers shall pay the certificate fee for apprentices and the annual renewal fee for apprentices provided by R.S. 37:1603.” (Italics ours.)
The delegation of unlimited discretionary powers to the Board herein without fixing any standards or guideposts for the Board to carry out the legislative will is in effect a surrender of legislative power. A very pertinent statement with reference to the delegation of legislative powers is contained in the case of Noyes v. Erie & Wyoming Farmers Cooperative Corp., 170 Misc. 42, 10 N.Y.S.2d 114, 121, as follows:
“ ‘The Legislature is free to choose among conflicting considerations, and mould the law according to its own will subject only to constitutional restrictions. It cannot delegate the same freedom of choice to an administrative officer. There it must erect guideposts which will enable the officer to carry out the will of the Legislature.’ Seignious v. Rice, 273 N.Y. 44, 50, 6 N.E.2d 91, 93. See also Stanton v. Board of Supervisors of Essex County, 191 N.Y. 428, 432, 84 N.E. 380; Darweger v. Staats, 267 N.Y. 290, 305, 196 N.E. 61.”
While the Legislature, under adequate standards fixed by it for the execution of its legislative policy, might confer power of discretion upon administrative boards, it cannot surrender the legislative power itself. In the case of State v. Chisesi, 187 La. 675, 693, 175 So. 453, 459, in discussing this grant of legislative power, this Court stated:
*579 “Adverting to the other reason why the statute in question constitutes a denial of the equal protection of the laws, we find the books full of decisions to the effect that a state statute or municipal ordinance which undertakes to regulate a lawful business or occupation by conferring upon a designated officer, or commission, or board, the authority, within his or its judgment or discretion, to grant or to withhold a license or permit to engage in the business or occupation, and which does not prescribe a rule or standard to which all persons similarly situated may conform, constitutes a denial of the equal protection of the laws. The leading case on the subject, of course, is Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220. The Louisiana cases maintaining the principle are: State v. Mahner, 1891, 43 La. Ann. 496, 9 So. 480; State v. Dubarry, 1892, 44 La.Ann. 1117, 11 So. 718; State v. Kuntz, 1895, 47 La.Ann. 106, 16 So. 651; City of New Orleans v. Palmisano, 1920, 146 La. 518, 83 So. 789; City of Shreveport v. Plerndon, 1925, 159 La. 113, 105 So. 244; State v. Carter, 1925, 159 La. 121, 105 So. 247; State ex rel. Dickson v. Harrison, 1926, 161 La. 218, 108 So. 421, and Bultman Mortuary Service, Inc., v. City of New Orleans, 1932, 174 La. 360, 140 So. 503.”
In the case of Bultman Mortuary Service v. City of New Orleans, supra, 174 La. 360, 365, 140 So. 503, 504, an ordinance was held unconstitutional “because the ordinance places it within the power of the council to grant or withhold permits, in the exercise of its administrative powers, according to its whim and fancy, thereby placing itself in position to display favoritism by granting its consent to one while refusing it to another under similar circumstances. [State of Washington ex rel.] Seattle [Title] Trust Co. v. Roberge, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210; Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; State ex rel. Dickson v. Harrison, 161 La. 218, 108 So. 421; State v. Carter, 159 La. 121, 105 So. 247.”
In State ex rel. Dickson v. Harrison, supra [161 La. 218, 108 So. 422], the following was cited from State v. Carter, supra:
“ ‘A statute or an ordinance which, instead of prescribing a uniform rule of action, undertakes to vest in a public officer or commission the authority to discriminate in favor of or against persons engaged in a legitimate business or occupation or enjoying a common right by granting or withholding a license or permit or approval, arbitrarily, or according to the officer’s or commission’s favoritism or whim, is violative of the' equal protection clause' of the Fourteenth Amendment.” Citing authorities.
*581 It was pointed out in Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 that the essentials of the legislative function are the determination of legislative policy and its formulation and promulgation as a defined and binding rule of conduct, and the essentials are preserved when Congress has specified the basic -conditions of fact upon whose existence or occurrence, ascertained from relevant data by a designated administrative agency, it directs that its statutory command shall be effective.
This Court in the case of City of Alexandria v. Alexandria Fire Fighters Ass’n, Local No. 540, 220 La. 754, 57 So.2d 673, 674, set out the general principles in regard to delegation of legislative authority as follows ;
“It is an elementary principle of constitutional law that legislative power, conferred under constitutional provisions, cannot be delegated by the Legislature either to the people or to any other body or authority.” '
Citing State v. Watkins, 176 La. 837, 147 So. 8; Cooley’s Constitutional Limitations, 8th Ed. Vol. 1, pp. 224, 238, 239, 240, 242, 244; 16 C.J.S., Constitutional Law, § 133, and 11 American Jurisprudence Section 214.
From a reading of these decisions, it is apparent that the statute involved herein is an unlawful delegation of legislative power to the Board of Examiners in Watchmaking; furthermore, it would permit said Board, if it so desired, to establish a monopoly.
For the reasons assigned, the judgment is affirmed.
HAMITER, J., concurs in the decree.
FOURNET, C. J., dissents, being of the opinion that the act is constitutional and therefore the trial judge should be affirmed,