154 So.2d 389 (1963)
244 La. 756
LOUISIANA STATE BOARD OF EMBALMERS
v.
George Washington BRITTON.
LOUISIANA STATE BOARD OF EMBALMERS
v.
Charlie WILSON.
Nos. 46609, 46610.
Supreme Court of Louisiana.
June 4, 1963.
Rehearing Denied June 28, 1963.
Michael M. Irwin, New Orleans, Jack P. F. Gremillion, Atty. Gen., John E. Jackson, Jr., Asst. Atty. Gen., for plaintiff-appellant.
*390 Watts & Crain, Franklinton, for defendants-appellees.
SANDERS, Justice.
This appeal presents for decision the constitutionality of LSA-R.S. 37:831-37:851, relating to the powers of the Louisiana State Board of Embalmers.
In these consolidated suits, the Louisiana State Board of Embalmers sought injunctions against the defendants restraining them from practicing funeral directing without a license. The defendants answered, attacking the constitutionality of LSA-R.S. 37:831-37:851, the statute under which the Board sought to act, on the grounds that it denied the defendants due process of law in violation of Article I, Section 2 of the LSA-Constitution and constituted an unlawful delegation of legislative power in violation of Article II, Section 2.
The district court declared LSA-R.S. 37:840 and LSA-R.S. 37:842 unconstitutional as an unlawful delegation of legislative power and dismissed the suits. After abandoning a motion for a new trial, the Louisiana State Board of Embalmers appealed.
The Louisiana State Board of Embalmers was first created by Act no. 66 of 1914, which had for its purpose the regulation of embalming and undertaking. The present law on this subject is incorporated in Chapter 10, Title 37 of the Louisiana Revised Statutes of 1950.
The defendants concede, as well they must, that the science of embalming and the business of funeral directing is a proper sphere for the exercise by the state of its police power. The care and burial of the dead are directly related to the public health, safety, and general welfare.
The defendants strenuously contend, however, that the statute fixes no proper standards for the exercise of the discretion vested in the Louisiana State Board of Embalmers. Hence, it constitutes an unlawful delegation of legislative power to the administrative board. As we view it, the contention is a serious one.
Delegations by the Legislature to administrative bodies of the power to administer laws have long been recognized. Such delegations are the product of necessity arising from economic and governmental conditions of increasing complexity.[1]
It is well settled, however, that the Legislature must establish reasonably clear standards or guides in such a delegation to fulfill constitutional requirements.[2] The salutary purpose of these standards is to prevent the abdication by the Legislature of its exclusive law-making power, provide meaningful guidance to the administrative body, inhibit the arbitrary use of authority by that body, and serve as a basis for judicial review.
The pivotal issue in the instant case is whether the Legislature has provided adequate standards in the assailed statute. The resolution of this issue requires a detailed examination of its provisions.
LSA-R.S. 37:832 creates the Louisiana State Board of Embalmers and prescribes its membership.
Section 840 provides:
"The board shall:
"(1) Prescribe the qualifications of those who desire to practice the science of embalming or the business of funeral directing, or both in connection with the *391 care and disposition of dead human bodies in this state;
"(2) Meet at least once a year or oftener as the proper and efficient discharge of its duties may require;
"(3) Adopt a common seal;
"(4) Prescribe qualifications governing the practice of embalming, the business of funeral directing and the operation of funeral establishments, including the right to make inspections in connection therewith, and shall adopt by-laws, rules and regulations therefor.
"(5) Have authority to appoint an attorney-at-law to represent it in all matters and fix his compensation and define his duties."
Section 842 further provides:
"A. Every person who desires to practice the science of embalming or to engage in the business of funeral directing, or both, within the state shall:
"(1) Be of good moral character;
"(2) Make a written application to the board for an authorizing certificate;
"(3) File with the application the fee provided in R.S. 37:845; and
"(4) Present himself before the board at a time and place to be fixed by the board.
"B. If the board finds that the applicant possesses adequate knowledge of the science of embalming, sanitation, and disinfection and meets the qualifications prescribed, the board shall issue to the applicant a certificate authorizing him to practice the science of embalming or to engage in the business of funeral directing, or both, as may be the case.
"C. Each establishment operated for the preparation, disposition and care of dead human bodies within this state shall:
"(1) Before beginning business, make written application for, and secure from, the board a certificate authorizing its operation;
"(2) Make payment to the board of the fee required by R.S. 37:845; and
"(3) Furnish such information regarding its qualifications and submit to such inspection as the board may require.
"D. If the board advises that the applying establishment meets the requirements prescribed by the regulations, particularly those relating to personnel, sanitation and disinfection, it shall issue a certificate to the applicant for a specific name and location, and should the name or location be changed, the certificate must be amended accordingly, and a charge, equalling the renewal fee paid.
"E. Every certificate issued hereunder shall be signed by the president and secretary of the board and attested by its seal. The board shall register each certificate holder as being duly certified for the purpose covered by the certificate."
It is clear that the only attribute definitely specified in the statute is that of good moral character. Adequate knowledge of the science of embalming, sanitation, and disinfection can only mean such knowledge as is deemed adequate by the Board. The requirement that the applicant meet the qualifications prescribed refers to the qualifications prescribed by the Board itself. As we view the statute, it delegates to the Board arbitrary power to grant or withhold a license.
The statement of legislative policy in the instant statute falls short of that in the statute regulating marine diving that was stricken in Banjavich v. Louisiana, Licensing *392 Board for Marine Divers[3] and that in the statute regulating watch repairing that was invalidated in State v. Morrow.[4] Hence, these two decisions control the disposition of this case.
In the Banjavich case, this Court stated:
"It is seen from a reading of Sections 8 and 10 of the law that the Board may prescribe examinations for all applicants `* * * that it deems necessary and proper' as a prerequisite for the issuing of any license thereunder and may also require the applicant to give physical demonstrations of fitness. These provisions vest arbitrary powers, uncontrolled by any fixed rule or standard, it being left to the unrestricted judgment and discretion of the Board to say who is worthy or unworthy of the privilege of engaging in the business of marine diving.

* * * * * *
"Moreover, it is patent that the delegation to the Board of discretionary powers to conduct any examination it deems necessary and proper, as a pre-requsite to the issuance of a license, constitutes an unlawful delegation of legislative power to an administrative body which cannot be countenanced for no guideposts or standards have been erected by the Legislature which will enable the Board to carry out its will."
However, the appellant Board contends that the rule requiring standards in a statutory delegation does not apply to statutes enacted under the police power for the protection of the public health, safety, or general welfare. We find no merit in this contention. The statutes stricken in both the Banjavich and Morrow cases were considered, at least for purposes of decision, as exercises of the police power.
We are aware that the present tendency of the law is toward greater liberality in measuring standards in delegations of discretion to administrative bodies.[5] However, despite the absence of any impediment to an adequate expression of legislative policy, the instant statute provides no real standards, or guides. Hence, we hold, as did the district court, that LSA-R.S. 37:840 and LSA-R.S. 37:842 are unconstitutional.
For the reasons assigned, the judgment of the district court is affirmed.
HAWTHORNE, Justice (dissenting).
See dissenting opinion in State v. Morrow, 231 La. 572, 92 So.2d 70.
NOTES
[1] See National Bank of Commerce v. Board of Sup'rs, 206 La. 913, 20 So.2d 264.
[2] Article II, Section 1 and 2, Article III, Section 1, Louisiana Constitution of 1921; Banjavich v. Louisiana Licensing Board for Marine Divers, 237 La. 467, 111 So. 2d 505; State v. Morrow, 231 La. 572, 92 So.2d 70; 1 Am.Jur.2d Administrative Law, § 113, pp. 913-914.
[3] 237 La. 467, 111 So.2d 505. The statute required specified periods of apprenticeship, physical demonstration of fitness, and qualification under "such examinations as may be prescribed by the board."
[4] 231 La. 572, 92 So.2d 70. The statute required good character, a minimum age, and such "general education, training and experience as the board may determine."
[5] See Woodard v. Reily, La., 152 So.2d 41 and National Bank of Commerce v. Board of Sup'rs., 206 La. 913, 20 So.2d 264.