223 So.2d 126

Dave L. PEARCE, Commissioner of Agriculture, ex rel. STRUCTURAL PEST CONTROL COMMISSION

v.

James SHARBINO.

No. 49551.

May 5, 1969.

Dissenting Opinion May 20, 1969.

Joel B. Dickinson, Baton Rouge, for plaintiff-appellant.

Gist, Methvin & Trimble, James T. Trimble, Jr., Alexandria, for defendant-appellee.

SANDERS, Justice.

This appeal raises the constitutionality of the Structural Pest Control Law, LSA–R.S. 40:1261–1274.

Dave L. Pearce, Louisiana Commissioner of Agriculture, acting on behalf of the Structural Pest Control Commission, sought an injunction against James Sharbino to restrain him from practicing structural pest control without a license. In his answer, Sharbino attacked the constitutionality of the Structural Pest Control Law, especially LSA–R.S. 40:1265, contending it is vague, contains no legislative standards, delegates legislative powers in violation of the Louisiana Constitution [1], and denies equal protection and due process guaranteed by the Fourteenth Amendment of the United States Constitution. The district court declared the statute unconstitutional and dismissed the suit.

The Commissioner of Agriculture has appealed.[2]

---

1. Article I, Section 2; Article III, Section 1; Article XIX, Section 14.

2. See Article VII, Section 10, Louisiana Constitution.

LSA–R.S. 40:1265 provides:

"A. Any person desiring to engage in structural pest control or eradication work shall file a written application for license with the commission. Any applicant who is qualified for examination shall be given a written examination for license by the commission, which examination shall take place not more than forty-five days from the date the application for license is filed. The examination shall take place at the domicile of the commission. All applicants for examination for license must have a knowledge of the practical and scientific facts underlying the practice of structural pest control, control of wood-destroying insects and fumigation and the necessary knowledge and ability to recognize and control those hazardous conditions which may affect human life and health.

"B. The commission may, by majority vote, adopt rules and regulations governing the issuance of licenses for each particular type of structural pest control which, however, shall not conflict with any provision of this Part.

"C. An applicant, in order to qualify for examination for license to engage in structural pest control work, or rodent control work, must produce satisfactory evidence to the commission that he is a graduate of a college or university and has a major in entomology, or must have completed at least four years of satisfactory work under the supervision of a pest control operator who is recognized, approved and licensed by the Structural Pest Control Commission in that phase or special field of work for which a license is desired; provided, however, that any foreign applicant from a state that does not require a license to engage in entomological, structural pest control work or rodent control work, must be a graduate of a college or university and have a major in entomology, or must produce satisfactory evidence to the commission that he has completed at least four years of satisfactory work in such state under the supervision of a recognized and reputable pest control operator, in order to obtain a license in this state."

* * *

Defendant contends the only requirement for a license is an examination of unspecified content. With no legislative standards, the examination is left to the uncontrolled discretion of the Commission, vesting that body with arbitrary power to grant or withhold a license. The defendant asserts the statute is unconstitutional, relying upon the holdings of this Court in Louisiana State Board of Embalmers v. Britton, 244 La. 756, 154 So.2d 389; Banjavich v. Louisiana Licens. Bd. for Marine Divers, 237 La. 467, 111 So.2d 505; and State v. Morrow, 231 La. 572, 92 So.2d 70.

The Commissioner, on the other hand, contends the statute contains reasonably clear standards or guides, fixing the scope of the examination, as well as the qualifications to take it.

In Louisiana State Board of Embalmers v. Britton, supra, we held:

"Delegations by the Legislature to administrative bodies of the power to administer laws have long been recognized. Such delegations are the product of necessity arising from economic and governmental conditions of increasing complexity.

"It is well settled, however, that the Legislature must establish reasonably clear standards or guides in such a delegation to fulfill constitutional requirements. The salutary purpose of these standards is to prevent the abdication by the Legislature of its exclusive law-making power, provide meaningful guidance to the administrative body, inhibit the arbirary use of authority by that body, and serve as a basis for judicial review."

■ A statute that confers arbitrary or uncontrolled power to grant or withhold a license to engage in an occupation violates the constitutional requirements. Banjavich v. Louisiana Licens. Bd. for Marine Divers, supra; 1 Am.Jur.2d, Administrative Law, § 108, p. 907.

■■■ To determine whether the present statute is unconstitutional, we must examine its provisions in the light of well established constitutional principles. Among them are salutary rules of judicial restraint. When a court can reasonably do so, it will construe a statute so as to preserve its constitutionality. Buras v. Orleans Parish Democratic Executive Committee, 248 La. 203, 177 So.2d 576; Bauman v. Ross, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270; United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989; 16 Am.Jur.2d, Constitutional Law, § 144, p. 345. Moreover, when a statute is susceptible of two interpretations, one making it unconstitutional and the other constitutional, the interpretation sustaining constitutionality should be adopted. Borden v. Louisiana State Board of Education, 168 La. 1005, 123 So. 655, 67 A.L.R. 1183.

The licensing requirements of the present statute may be divided into two classes: qualifications to take the examination and guides for the examination.

Subsection C sets forth the qualifications to take the examination. A resident applicant must produce "satisfactory evidence" that he is a college graduate with a major in entomology, the science dealing with insects, or that he has completed four years of "satisfactory work" under the supervision of a licensed pest control operator.

■ Defendant attacks the qualification provision, contending the language "satisfactory evidence" and "satisfactory work" leaves an applicant's qualifications to the uncontrolled discretion of the Commission. We think not.

■ The phrase "satisfactory evidence" is a common one in law. It means that competent evidence which satisfies an unprejudiced mind of the existence of a fact. Houle v. Tondreau Bros. Co., 148 Me. 189, 91 A.2d 481. In the present context, "satisfactory work" means work that meets the minimum standards of apprenticeship generally prevailing in the occupation. Neither of the phrases invests the Commission with unfettered discretion. They represent objective standards. Commission rulings based on them are subject to judicial review.

Subsection A of the statute deals with the examination. The examination must be in writing; it must be given within forty-five days from the filing of the application; it must be given at the domicile of the Commission. The final sentence provides:

"All applicants for examination for license must have a knowledge of the practical and scientific facts underlying the practice of structural pest control, control of wood-destroying insects and fumigation and the necessary knowledge and ability to recognize and control those hazardous conditions which may affect human life and health."

It is this sentence that has produced the most difficulty in the litigation. The defendant contends the sentence pertains only to the applicant, leaving no guide as to the subject matter or scope of the examination. The Commissioner of Agriculture, on the other hand, asserts it fixes the subject matter of the examination. Adopting defendant's contention, the district court held the sentence relates only to the applicant and has no relation to the examination itself. We disagree with this limited construction.

■ To ascertain the true meaning of the sentence, it must be examined in context. LSA–C.C. Art. 16; Thibaut v. Board of Com'rs, 153 La. 501, 96 So. 47. The sentence, as we have observed, forms a part of the subsection devoted to the examination, rather than qualifications. To construe the sentence as relating only to an applicant's qualifications would result in a double testing of knowledge, one to screen the applicant to take the examination and the other for the examination itself. This unusual result can be avoided by harmonizing it with the subsection topic: guides for the examination. Although the sentence is inartistically phrased, it may reasonably be construed to refer to the matters covered by the examination. As thus construed, the statute provides the examination shall test

the knowledge of the applicant as to the following matters:

(1) Practical and scientific facts ·underlying the practice of structural pest control;

(2) Control of wood-destroying insects;

(3) Fumigation;

(4) Recognition and control of hazardous conditions which may affect life · and health arising from pest infestation and control.

LSA–R.S. 40:1261 defines structural pest control, fumigant, and the other terms used in the occupation. Hence, the standards or guides for the examination are reasonably clear.

The cases defendant relies upon are inapposite. In State v. Morrow, supra, the statute regulating watchmaking required the applicant to "possess such general education, training and experience as the Board may determine." The statute contained no specific provision for an examination. The court, noting the absence of proper standards or guideposts, declared the statute unconstitutional. In Banjavich v. Louisiana Licens. Bd. for Marine Divers, supra, the examination sections declared that the Board may prescribe any examinations "that it deems necessary and proper." This Court held these provisions vested arbitrary powers, uncontrolled by any fixed rule or standard. In Louisiana State Board of Embalmers v. Britton, supra, a more recent case, the statute required that the applicant possess "adequate knowledge of the science of embalming, sanitation, and disinfection" and meet any other qualifications prescribed by the Board. We held the statute contained "no real standards, or guides."

We hold the statute to be constitutional.

For the reasons assigned, the judgment of the district court is reversed and judgment is rendered in favor of plaintiff and against the defendant, James Sharbino, granting plaintiff an injunction restraining and enjoining the defendant from engaging in the practice of structural pest control until he has been licensed under the Structural Pest Control Law, LSA–R.S. 40:1261–1274. All costs of court are assessed against defendant.

BARHAM, J., concurs.

SUMMERS, Justice (dissenting).

Two classes of applicants are established by the legislation under contest here: (1) those who must produce satisfactory .evidence to the Commission that they are graduates of a college or university and have a major in entomology, and (2) those who have completed at least four years of "satisfactory work" under the supervision of a pest control operator who is recognized, approved and licensed by the Struc-

tural Pest Control Commission.[1] La.R.S. 40:1265, subd. C.

One or the other of these two conditions must be fulfilled before the "applicant" is permitted by the Commission to take the required written examination for a license to do pest control work. The scope of the examination is set out in Section 1265, subd. A of Title 40 of the Revised Statutes. It requires a knowledge of the practical and scientific facts underlying the practice of structural pest control, control of wood-destroying insects and fumigation, and the necessary knowledge and ability to recognize and control those hazardous conditions which may affect human life and health.

Perhaps it could be conceded that satisfactory evidence that the applicant is a graduate of a college or university and has a major in entomology is a sufficiently definite guideline or standard the Commission may impose as a prerequisite to the right to take an examination for a license. But I cannot agree that completion of at least four years of "satisfactory work" under the supervision of a licensed pest control operator furnishes a sufficiently definite guideline to escape the charge that the Legislature has unlawfully delegated its authority and responsibility.

In the case of the university or college degree requirement, satisfactory evidence of this attainment is the degree or diploma or a certificate from the university or college concerned. And definite curricula and standards are established in universities and colleges to make those requirements reasonably ascertainable by any party desiring to prepare himself for a license. But since the Structural Pest Control Law recognizes an alternate to this qualification, under which appellee falls, that requirement, too, must provide a reasonably ascertainable standard and guide to the qualifications requisite for a license to do pest control work in order to escape the charge that the Legislature has unlawfully delegated its authority to an administrative body. In my firm view this alternate method does not satisfy these requirements. Quoted in full it simply states that an applicant:

"* * * must have completed at least four years of satisfactory work under the supervision of a pest control operator who is recognized, approved and licensed by the Structural Pest Control Commission in that phase or special field of work for which a license is desired;".

By making the requirement "satisfactory work" the Legislature has, in effect, established a vague and indefinite requirement as a prerequisite to taking the examination to do pest control work. With this delegation of authority the Commission has no guide or standard to control its regulation

---

1. A special proviso for foreign applicants makes similar requirements.

of the prerequisite requirements. What is "satisfactory work" furnishes no ascertainable standard to a prospective applicant desiring to satisfy the prerequisites for taking the examination.

The Commission may, under this vague and indefinite grant of authority, leave the determination of the satisfactory character of the applicant's work to his employer, to his coworkers, to a majority of his employers, where several are involved, to standards the Commission may impose which would be discriminatory, or to arbitrary standards imposed by the Commission which have no relation to pest control work. The list could be prolonged indefinitely; it is for this reason the act is unconstitutional as applied to the appellee. In order to qualify for the examination appellee must work four years without knowing what "satisfactory work" will mean to the Commission at that time. The prospective applicant is thrown upon the unlimited discretion of the Commission and when this happens due process is abandoned. Appellee has, therefore, properly invoked the State and Federal constitutional guarantees against deprivation of his liberty and property without due process of law. U.S.C.A.Const. amend. XIV, § 1; La. Const. art. 1, § 2.

It is an elementary principle of constitutional law that legislative power conferred under constitutional provisions, cannot be delegated by the Legislature either to the people or any other body or authority. La.Const. art. 3, § 1. City of Alexandria v. Alexandria Fire Fighters Ass'n, Local No. 540, 220 La. 754, 57 So.2d 673 (1952).

Delegation of unlimited discretionary powers to the Commission without fixing any standard or guidelines for carrying out the legislative will amounts to a surrender of legislative power. State v. Morrow, 231 La. 572, 92 So.2d 70 (1956).

Though the Legislature is free to choose among conflicting considerations and, in so doing, mold the law according to its own will, that prerogative is subject to constitutional restrictions. And the freedom of choice which the Legislature enjoys may not be delegated to an administrative officer. When a delegation of power occurs it can only legitimately take place when proper guidelines are erected which make the legislative will reasonably ascertainable. See State v. Morrow, ibid.

In conclusion I wish to quote at length from Banjavich v. Louisiana Licensing Board for Marine Divers, 237 La. 467, 111 So.2d 505 (1959) for the lesson taught there has not been observed in this decision.

"That the pursuit of a legal occupation is a property right cannot be gainsaid. This court, buttressed by authorities of the Supreme Court of the United States, has recognized that the right to engage in a lawful calling is of such a basic

nature that the curtailment of the right by oppressive or arbitrary legislation effectuates a deprivation of the complainant's property without due process and denies him equal protection of the law.

"In Allgeyer v. State of Louisiana, 165 U.S. 578, 589, 17 S.Ct. 427, 431, 41 L.Ed. 832, 835, the Supreme Court of the United States, referring to the Fourteenth Amendment, declared:

'The "liberty" mentioned in that amendment means, not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; * * *.'

"This Court, in State v. Chisesi, 187 La. 675, 175 So. 453, 457, after quoting the above language from the Allgeyer case, said:

'In the course of the opinion in the case cited, the court quoted with approval from the opinion of Mr. Justice Bradley, in Butchers' Union S. H. & L. S. Co. v. Crescent City L. S. L. & S. H. Co., 111 U.S. 746, 765, 4 S.Ct. 652, 28 L.Ed. 585, 590, to the effect that to deprive a person of his right to pursue his chosen calling deprives

him of his liberty, *and to prevent his continuing in a lawful business or pursuit in which he is already engaged deprives him of his property, in the meaning of the Fourteenth Amendment.'* (Italics ours.)

See also Mongogna v. O'Dwyer, 204 La. 1030, 16 So.2d 829, 152 A.L.R. 162; 28 Am.Jur. Verbo 'Injunctions', Sections 74 and 182; Truax v. Corrigan, 257 U.S. 312, 42 S.Ct. 124, 66 L.Ed. 254; Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229 and Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, 39 A.L.R. 468."

I respectfully dissent.