LEMMON, Judge
(dissenting).
I believe the majority erred in holding that LSA-R.S. 13:2189 is controlling in this case. While at first glance this provision seeemingly is on point, it becomes apparent upon further analysis that the legislature could not have intended this statute to apply to the ten year warranty period of LSA-C.C. art. 2762, under which this action was brought. Article 2762 reads:
“If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be built in wood or with frames filled with bricks.” (Emphasis supplied).
While the majority is correct that prescriptive periods can be altered retroactively, they have failed to properly consider the effect of R.S. 13:2189 upon the time period provided in Article 2762.
In my opinion Article 2762 does not provide a prescriptive period. The prescriptive period for an action under Article 2762 was provided in the Civil Code by Article 3545, which reads:
“The action against an undertaker or architect, for defect or [of] construction of buildings of brick or stone, is prescribed by ten years.”
While each article provides for ten year periods in regard to construction of buildings, these periods are not redundant prescriptive periods, since only Article 3545 refers to the time limit on the action. The period prescribed in Article 2762 refers to a period of warranty or responsibility which is imposed by law on the contractor. If the building does not fall to ruin within ten years, no action against the contractor ever accrues, and no prescriptive period within which to bring this action is necessary. If the building does fall to ruin within ten years, the contractor shall bear the loss, if on account of the badness of his workmanship. The action on this defect thereby accrues only when the building falls to ruin.
HISTORICAL BACKGROUND
My interpretation of the two codal articles is substantiated by a review of their history.
The predecessor of Article 2762 is Article 1792 of the Code Napoleon (1804), which provides for a period of ten years *644 responsibility in the construction of certain buildings.[1]
Also present in the Code Napoleon in the section entitled “Of Prescription” is Article 2270, which is the predecessor of Article 3545, and which provides for a similar time period of ten years.[2]
Very little modification of these two code articles has subsequently taken place in'the later codes of Louisiana, including the present Louisiana Civil Code of 1870.[3] It is very doubtful that through these various revisions,[4] the redactors all failed to see that these two codal provisions were repetitive, but on the contrary, I believe there was a separate purpose and meaning for each of these ten year periods.
Planiol provides support for this contention in his analysis of the two periods presented in the Code Napoleon (1804) Articles 1792 (LSA-C.C. art. 2762) and 2270 (LSA-C.C. art. 3545). The ten year period in Article 1792 is a “period of responsibility” or what can be called an implied in law warranty period, which is distinguished from the prescriptive period provided for in Article 2270.[5]
*645 Although Planiol offers different possibilities for when the time begins to run under each of these separate articles, I will not attempt to set forth any rule in this dissenting opinion. However, it is clear that Article 2762 contains a warranty period, which by its nature is an essential element of the substantive rights created in this article.[6] This is a time period during which the falling to ruin must occur to give rise to a cause of action.
The rights created in this article were bargained for and relied upon by the plaintiff, and were imposed by law into the contract. It is well settled that all laws which existed at the time of the contract are incorporated into the contract as though expressly written into it. Dantoni v. Board of Levee Commissioners, 227 La. 575, 80 So. 2d 81 (1955); Johnson v. Anderson-Dun-ham Concrete Co., 212 La. 276, 31 So.2d 797 (1947); Robinson v. Horton, 197 La. 919, 2 So.2d 647 (1941).
APPLICATION OF LSA-R.S. 13:2189
'Applying LSA-R.S. 13:2189 to Article 2762 has the effect of not merely retroactively altering a prescriptive period of time, but of altering a contractual obligation which has been entered into. In effect, there is no possibility of actionable rights *646 accruing during the last seven years of the warranty period, according to the majority application of R.S. 13:2189. It is fundamental that if a provision is to merely have prescriptive effect, there must already be the possibility and the capability of bringing an action. See Dalton v. Plumbers & Steamfitters Local Union No. 60, 240 La. 246, 122 So.2d 88, 89-90 (1960); Sanders, Sanders Lectures on the Civil Code, 145 (Bonomo Ed.1925).[7] ...
In this case a cause of action and the possibility of asserting it did not exist until 1968, when the building allegedly fell to ruin, but at this time the majority claims that the plaintiff’s cause of action had already prescribed. This produces an' absurdity which cannot withstand reason.
I can only conclude that in applying LSA-R.S. 13:2189 to Article 2762, the majority has allowed a prescriptive period to interfere with and impair substantive contractual rights, namely, a warranty that the building would not fall to ruin in ten years. However, a subsequent law which interferes with contractual obligations is unconstitutional, being in violation of LSA-Const. Art. 4, § 15[8], and U.S.C.A.Const. Art. 1, § 10, cl. I.[9] In an illustrative case, Dantoni v. Board of Levee Commissioners, supra, the court stated:
“[1-3] Under the provisions of Section 10 of Article 1 of the Federal Constitution, no state can pass any law impairing the obligation of contracts. Under the provisions of Section 15 of Article 4 of our Constitution, no law can be passed impairing the obligation of contracts. It is a fundamental principle that laws existing at the time a contract is entered into are incorporated into and form a part of the contract as though expressly written therein. It is also well established that the value of a contract cannot be diminished by subsequent legislation. The impairment is not one of degree but any encroachment in any respect upon the obligation cannot be permitted.”[10]
Since LSA-R.S. 13 :2189 as applied by the majority would interfere with the period of responsibility, or implied in law warranty period of Article 2762, this application is clearly unconstitutional.
However, I believe that the legislature did not intend for LSA-R.S. 13:2189 to have unconstitutional application,[11] but intended for it to only have application to actions which had accrued at the time the building was accepted, and therefore could be prescriptible. I also believe that the legislature did not intend to cut off rights of a public body to seek the same redress on an implied warranty of workmanship that an individual would have available to him under Article 2762. Therefore, I conclude that the majority erred in applying *647 LSA-R.S. 13 :2189 to actions arising under Article 2762.
OBLIGATION OF SURETY
While this appeal involves a surety of a contractor, this surety has obligated itself for the faithful performance of the construction contract, and therefore must remain as a party to this suit. While not specifically referring to Article 2762 the court in Svendson v. American Indemnity Co. of Galveston, 76 So.2d 737 (Orleans App.1955), held the surety liable for defective work under a private works contract. See also, Police Jury of Parish of Vernon v. Johnson, 111 La. 279, 35 So. 550 (1903).[12] Although the construction contract includes obligations not found in the Public Works Act, this does not mean that contractors and their sureties are free of liability for faulty work or any other type of liability which could possibly develop. The Public Works Act does not limit or prescribe all the obligations and liabilities which can result from public works contracts. This case is simply another case where there is liability outside of the limited framework of the Public Works Act, but which is compatible with it.
For these reasons, I believe the exception of prescription should be reversed, and therefore respectfully dissent.
Rehearing denied.
LEMMON, J., is of the opinion the rehearing should be granted.

. The French text of Article 1792 reads:
“Si l’édifice construit a. prix fait, perit en tout ou en partie par le vice de la construction, méme par le vice du sol, les architecte et entrepreneur en sont re-sponsables pendant dix ans.”
The English text reads:
“If the edifice, built at a set price, perish in whole or in part by defect in its construction, even by defect in the foundation, the architect and the contractor are responsible therefor for ten years.”
Translation from Code Napoleon (R.G. Olaitor Ed., 1960).

. The French text of Article 2270 reads:
“Apr&s dix ans, l’architecte et les entrepreneurs sont déehargés de la garantie des gros ouvrages qu’ils ont faits ou dirigés.”
The English text reads:
“After ten years, architects and contractors are discharged from the warranty of workmanship performed or directed by them by estimate.”

. Louisiana Law Institute compiled edition of Civil Codes of Louisiana, 3 La. Legal Archives pp. 1511; 1943-1944. There was no reference to these articles in the Projet of the Civil Code of 1825; see, A Republication of the Projet of the Civil Code of Louisiana of 1825, La. Legal Archives Vol. I.

. Moreau-Liset and James Brown were authorized to codify the law, which became the Code of 1808. Territorial Acts of 1806, page 218. Moreau-Liset, Edward Livingston and Pierre Derbigny were authorized to revise the Code of 1822 and provide the Projet of 1825, which was the basis for the Code of 1825. La.Acts of 1823, p. 88, pursuant to resolutions adopted March 14, 1822.

. In Planiol’s Traite elementaire de droit civil, 11th Ed., 1939 (La. State Law Institute, tr. 1959) Vol. 2, Pt. 2, § 1912-1914, pp. 149-150, he distinguishes these two time periods in the following manner:
“1912. Work Giving Occasion for the Ten Years Responsibility The determination of work for which the ten years responsibility is applicable has given rise to some difficulties. Art. 1792 speaks of edifices; Art. 2270 of large works. The first of these texts having an exceptional character (infra No. 1915) should be restricted to the kind of work which it contemplates, and it is necessary also that the edifices be constructed at a fixed price. As to Art. 2270, it represents the general rule, and the term which it employs being more general (large works), can apply to work other than the construction of “edifices,” for example to wells (Dijon, 13 May 1862, D. 62.2.138). Comp. Angers, 23 Aug. 1877, D. 78.2.45.
However, it must involve “large works” (Oass.Oiv. 19 Dec. 1928, D.H. 1929, 66; Cass.Req., 27 Feb. 1929, P. and S. 1929.1.128). Thus the putting up of the front of a shop does not give occasion for the ten years responsibility, and the contractor is discharged upon the acceptance of the work (Amiens, 29 May 1871, D. 71.2.171).
“1913. Duration of the Responsibility The ten years responsibility established against architects and entrepreneurs prescribes in ten years. On this point there can be no doubt. Therefore, if an accident does not take place in the ten years, the architect is fully discharged.
The ten years run from the acceptance of the work (Paris, 12 May 1874, D. 74.2.172, S. 76.2.240; Bourges, 14 May 1884, D. 84.2.216, S. 84.2.159).” “1914. Prescription of the Action
*645 When an accident occurs, how long does the action remain open to the proprietor against his architect and entrepreneur? To this question three responses are possible.
(1) The two Articles 1792 and 2270 fix the delay within which the accident must happen for the architect to be responsible: it is a time for testing the solidity of the house, but the duration of the action for damages is not fixed. The general rules, therefore, apply and this action prescribes in thirty years (Aubry and Rau, § 374, note 30.-0ass., 5 Aug. 1879, D. 80.1.17, S. 79.1.405).
(2) Another rule was proposed by M. Duvergier. The two articles 1792 and 2270 establish two distinct and successive delays of ten years. Art. 1792 fixes only (as in the preceding opinion) the time of testing during which the accident must be produced for there to be responsibility; this article is placed under the title of lease of services. Art. 2270, placed under the title of prescription, regulates the action in warranty fixing ten years for it, which run from the day of the accident or from the discovery of the vice, whichever one happens before the expiration of the first delay of ten years. An ingenious argument, but one which is difficult to reconcile with the texts. See, however, Testoud, Revue critique, 1880, p. 257; Paris, 6 June 1894, S. 95.2.7.
(3) In practice the problem has been rigorously resolved against the proprietor : the two articles establish a single delay and this delay includes, at the same time, the time during which the responsibility for accidents lasts, and the prescription of the action. So that in an action against the architect
the owner has a variable delay: the time remaining of the ten years after the accident, which can be very short or even nothing, if the accident happens the last day of responsibility. This rule which has been adopted by the jurisprudence, is based on a long and constant tradition (Cass., Oh. réunies, 2 Aug. 1882, D. 83.1.5, S. 83.1.5, note of M. Labbe; Bourges, 14 May 1884, D. 94.2.216, S. 84.2.159).
As a rule, the jurisprudence admits that the proprietor can act as soon as a vice reveals itself and without waiting for the ruin of the edifice to be produced (Cass., 16 July 1889, D. 90.1.488, S. 92.1.350; Cass., 3 Dec. 1890, D. 91.1.151, S. 94.1.343).”
For an excellent discussion of use of Planiol by Louisiana courts, see Dainow, “Use of English translation of Planiol by Louisiana courts, 14 Am.J.Comp.L. p. 68 (1965).

. The concept of time being an essential element of substantive rights is illustrated in the distinction between peremptive and prescriptive periods of time, which has been well established in our jurisprudence since the landmark case of Guillory v. Avoyelles Ry. Co., 104 La. 11, 28 So. 899, 901 (1900). See also, Jackson v. Hanna, 206 So.2d 779 (La.App. 2 Cir. 1968) ; Succession of Pizzillo, 223 La. 328, 65 So.2d 783 (1953); Miller v. American Mut. Liability Ins. Co., 42 So. 2d 328 (La.App. 1 Cir. 1949) ; Carpenter v. Cox, 186 So. 863 (La.App. 2 Cir. 1938) ; Matthews v. Kansas City Southern Ry. Co., 10 La.App. 382, 120 So. 907 (2 Cir. 1929) ; Hollingsworth v. Schanland, 155 La. 825, 99 So. 613 (1924).

. “Recollect that in all liberative prescriptions it begins from the moment the right to sue arose; you may have an inchoatie right of some kind, but until that inchoate right has ripened into a right of action prescription does not begin to run.” Sanders, supra at 145.

. LSA-Const. Art. 4, § 15 reads in part as follows:
“No ex-post facto law, nor any law impairing the obligation of contracts, shall be passed; * *

. U.S.C.A.Const. Art. 1, § 10, cl. 1 reads as follows in pertinent part:
“No state shall * * * pass any * * * Law impairing the Obligation of Contracts * *

.See also Louisiana Gas Serv. Co. v. Louisiana Public Service Commission,
245 La. 1029, 162 So.2d 555 (Í964) ; Leiter Minerals, Inc. v. California Co., 241 La. 915, 132 So.2d 845 (1961) ; State ex rel. Porterie v. Walmsley, 183 La. 139, 162 So. 826 (1935) ; Long v. Northeast Soil Conservation District of La., 226 La. 824, 828, 77 So.2d 408 (1954) ; Harris v. Monroe Building & Loan Ass’n., 154 So. 503 (La.App. 2 Cir. 1934) ; 16 Tul.L.Rev. 143 (1941).

. See e. g., Pearce ex rel. Structural Pest Control Commission v. Sharbino, 254 La. 143, 223 So.2d 126 (1969); Mire v. Hawkins, 249 La. 278, 186 So.2d 591 (1966).

. In the instant case the surety’s obligation reads in part as follows:
“ * * * [The surety] guarantee [s] to the ORLEANS PARISH SCHOOL BOARD the faithful performance of the foregoing contract by the said Contractor, * * '* ” * * * “NOW THE CONDITION of this obligation is such that if the said Contractor, shall well and faithfully perform all and singular the obligations assumed by said Contractor in the aforesaid contract, * * * and shall fully secure and protect the said ORLEANS PARISH SCHOOL BOARD, its legal successor and representative, from all liability in the premises, and from all loss or expense of any kind, including all costs of court and attorney’s fees, made necessary or arising from the failure, refusal or neglect of the Contractor, to comply with any of the obligations assumed by it; * * ” * * * (emphasis added)