Roy D. FRANZOSE

v.

ALCO PACKING COMPANY and St. Paul Fire and Marine Insurance Company.

Supreme Judicial Court of Maine.

Argued June 11, 1981.

Decided Aug. 11, 1981.

Harry N. Starbranch (orally), Augusta, for plaintiff.

Gross, Minsky, Mogul & Singal, P. A., George Z. Singal (orally), Bangor, for defendant.

Before McKUSICK, C. J., WERNICK, GODFREY, ROBERTS and CARTER, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.

Employee Roy Franzose appeals a pro forma judgment of the Superior Court, Kennebec County, affirming the denial of his petition for award of workers' compensation. The Workers' Compensation Commission found that any disability from which the employee may be suffering is not work related. The single issue presented is whether competent evidence supports the Commission's finding. Because there is such evidence, we affirm the judgment.

The employee is a tractor-trailer driver for Alco Packing Company. On October 21, 1977, he was in Lyndonville, Vermont, loading calves onto a truck for his employer. The animals, which weighed between 80 and 150 pounds, had to be grasped by the employee around the neck and hind legs, lifted above his chest, and thrown into one of the truck's side doors. In the course of loading, the employee suddenly felt severe pain in his chest and left arm accompanied by shortness of breath, sweating, and faintness. Shortly thereafter he passed out. Although others completed loading the truck, the employee, instead of consulting a doctor in Vermont, drove the truck back to his employer's plant in Winslow, Maine, a distance of over 200 miles. The chest pain and faintness persisted during the drive, forcing him to stop periodically to rest. Upon his arrival in Winslow, he parked the truck, went home, and on the following morning called his family doctor. An appointment was scheduled with the doctor for October 28, at which time, apparently, the employee was given a day of testing in a local hospital.

He attempted to return to work for Alco Packing Company, but found that because of the resulting left arm and chest pain he could not do the job. He has not worked since.

On May 4, 1978, having given timely notice of his injury, the employee filed a petition for award of compensation. In the proceedings that followed, the depositions of two expert medical witnesses were admitted into evidence. The only other witness to testify was the employee himself, who stated that he continues to experience chest pain whenever he uses his left arm too much.

The first deposition was that of Dr. Elliot Sagall, a specialist in cardiology from Boston. Dr. Sagall's diagnosis, based primarily upon a medical history taken from the employee on January 4, 1979, was that the calf-loading incident of October 21, 1977, had caused an acute myocardial infarction, or heart attack; that since that October the employee has been suffering from post infarction angina pectoris, the symptoms of which have been exacerbated by cardiac neurosis; and that the employee is permanently disabled from engaging in any work, including his work at Alco, that might require mildly strenuous effort.

The second deposition was that of Dr. Bernard Givertz, a specialist in cardiovascu-

lar disease from Portland. Dr. Givertz had examined the employee on December 12, 1978. Although Dr. Givertz would not rule out all possibility that the employee had suffered a heart attack when loading calves on October 21, 1977, he considered this to be unlikely. Instead, he believed it to be "quite possible" that the pain experienced by the employee at that time represented "an acute musculoskeletal strain" while the concurrent collapse, in the Doctor's view, was due to fatigue.

At the time of his examination, Dr. Givertz found no evidence of post infarction angina pectoris. He did find a mitral valve prolapse, which, according to both doctors, can present a pain syndrome similar but not identical to that of angina. He stated that he personally would encourage the employee to return to work as soon as possible.

On the above evidence, the Workers' Compensation Commission summarily denied the employee's petition. Pursuant to 39 M.R.S.A. § 99, the employee moved for findings of fact and conclusions of law. In response, the commissioner essentially set forth what has been summarized above, then declared:

I have followed the opinion of Dr. Givertz and concluded that the employee's problems did not arise as a result of the job incident which occurred on October 21, 1977. I do conclude that the employee did incur symptoms and discomfort as a result of the incident on October 21, 1977, but I do find and conclude that the disability that he may be suffering from was not occasioned by a work related incident.[1]

■ Because the determination of whether a current disability is or remains causally connected to a work related inci-

dent is a question of fact, e. g. Rowe v. Bath Iron Works Corp., Me., 428 A.2d 71, 73 (1981), we must sustain the commissioner's determination if it is supported by competent evidence, e. g. Bruton v. City of Bath, Me., 432 A.2d 390 (1981); Dunton v. Eastern Fine Paper Co., Me., 423 A.2d 512, 518 (1980). The burden of proving the causal connection rests on the employee. E. g. Rioux v. Franklin County Memorial Hospital, Me., 390 A.2d 1059, 1061 (1978); Houle, Aplt. v. Tondreau and Aetna, 148 Me. 189, 193, 91 A.2d 481, 483 (1952).

■ The crucial testimony, that upon which the commissioner expressly relied, came from the deposition of Dr. Givertz who declared:

[I]n my professional opinion, this [continuing chest] pain is not related to coronary heart disease, is not angina pain, and most likely represents a typical chest pain, *probably musculoskeletal or possibly related to the mitral valve prolapse syndrome that he has, but certainly in no way related to . . . his accident or questionable heart attack.* (emphasis added)

From Dr. Givertz's testimony, the commissioner could reasonably conclude that whatever pain the employee still suffers is not connected to heaving calves in October, 1977. Whether the October, 1977, incident aggravated a preexisting susceptibility to musculoskeletal strain or caused the infirmity in the mitral valve to pass from an asymptomatic to a symptomatic condition, Dr. Givertz was not asked. On this record, we cannot say that the commissioner erred in determining that the employee's current disability is not work related.

The entry will be:

Judgment affirmed.

1. Among the reasons for choosing to rely on the opinion of Dr. Givertz, the commissioner listed the following:

(1) Dr. Sagall found a normal electrocardiogram, yet diagnosed a myocardial infarction despite his testimony that electrocardiograms often reveal myocardial infarctions; (2)the employee did not see his family doctor until one week after the calf loading incident and was at that time admitted to the hospital for no more

than a day despite Dr. Sagall's observation that the family doctor had diagnosed a heart attack; (3) Dr. Givertz's discovery of a mitral valve problem is consistent with, and tends to explain, Dr. Sagall's detection of a systolic murmur; (4) Dr. Givertz's conclusions were consistent with an individual who has intermittent chest pain, yet tests normally. Each of these explanations are derived from record testimony.

Further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $350.00, together with his reasonable out-of-pocket expenses for this appeal.

All concurring.