MILLER, Judge.
Defendant Sidney Pitre appeals the order requiring him to restrain his cattle for testing by plaintiff Louisiana Livestock Sanitary Board, pursuant to the Bang’s Disease Eradication Statute, LSA-R.S. 3 :2221 et seq. We affirm.
On July 28, 1971, six of Pitre’s cattle were delivered to Micelle’s Commission Yards, Inc., Lake Charles, Louisiana, by his boy. On the same date, payment for the six head of cattle was made by check issued by Micelle’s payable to Pitre for $936.58. Pitre’s endorsement appears on the back of the check. Morris Micelle, operator of Micelle’s, testified that Pitre’s cattle were checked in on that date. Upon receipt of these cattle, they were tagged with numbers 705 through 710. Patricia E. Calhoun, invoice clerk for Micelle’s, testified as to the uniformity of tagging procedures in order to avoid error, and that each animal received by the yard is assigned to its own separate and distinct number. The animal numbered 709 was sold that day to Pioneer Boneless Beef in *801 Grenada, Mississippi, and the $936.58 check to Pitre included payment for that animal.
A shipment of cattle from Micelle’s was received by Pioneer on July 29, 1971. Mi-celle’s backtag number 709 was on one of the animals received that date and the animal was slaughtered on July 30, 1971. Dr. James G. Teernage, Jr., DVM, the veterinarian in charge of sanitation for the meat inspection program at Pioneer, testified that he was in charge of blood sampling operations for the slaughter of cattle on July 30, 1971. A uniform procedure was followed requiring blood from each animal to be taken and placed in a sample tube. The backtag on the animal was removed from the slaughtered animal and wrapped around the blood sample tube. Both were placed in an envelope and inserted into a wire rack containing slots for forty samples. At the end of the day, these samples were sent to the Veterinary Diagnostic Laboratory, in Jackson, Mississippi.
Charles L. Robinson, a supervisory medical biological technician in charge of the brucellosis section of the Jackson, Miss., Veterinary Diagnostic Laboratory of the United States Department of Agriculture, received the samples in question from Pioneer on August 2, 1971. Two samples were found to have contained positive evidence of brucellosis, one of these bearing backtag number 72MC8709. The prefix 72MC8 was Micelle’s prefix for the July 28, 1971 sale.
Dr. Paul Becton, DVM, employed as Veterinarian in charge for the State of Mississippi by the U.S. Department of Agriculture, testified that the procedures followed by Robinson and all his subordinates are in compliance with the uniform methods and rules for eradication of brucellosis established by the U.S. Animal Health Association.
The trial court properly held that animal bearing number 72MC8709 was infected with brucellosis and that this animal had belonged to defendant Pitre. From initial receipt of the animal to the final blood testing, the record establishes that adequate care was taken through the use of uniform tagging and checking procedures to avoid the possibility of erroneous identification of the original source of the infected animal. Pitre makes no substantial allegation that the systems used were fallible.
Pitre specified error by the trial court in its finding that plaintiff met its burden of proof in establishing its right to a remedy under LSA-R.S. 3 -.2221 and that this statute is unconstitutional. Particularly emphasized is the alleged failure of plaintiff to establish the existence of cattle belonging to Pitre and the existence of a particular herd belonging to Pitre. We find that the record adequately establishes the existence of both disputed facts. We further find that Pitre has not been adversely affected by a constitutional infirmity that may exist in the statutory scheme here involved, and that defendant thus has no standing to complain of the existence of an alleged infirmity.
While Part IV of Chapter 16 of Title 3 of the Revised Statutes does contain criminal sanctions for failure to comply with rules or regulations promulgated by the Louisiana Livestock Sanitary Board, particularly LSA-R.S. 3:2232, the action before this court does not constitute a criminal prosecution. Rather, plaintiff is merely attempting to obtain compliance with testing procedures legislatively authorized in LSA-R.S. 3:2221. No fine or imprisonment is sought to be imposed upon defendant in this proceeding. The action here is to compel the owner of cattle to pen his cattle (at his expense) so that his cattle can be tested (at the government’s expense). This testing is necessary in order that his cattle, his neighbor’s cattle, and the cattle from his area of the state might not be quarantined.
LSA-R.S. 3:2221 provides:
A. Any person owning or having charge of any male or female cattle over eight months of age in a herd which has shown evidence of brucellosis infection, *802 or has intermingled with or otherwise been exposed to brucellosis infected animals, upon at least thirty days prior written notification by an authorized agent of the Livestock Sanitary Board shall present and restrain the cattle for identification and testing, and such infected herds shall be retested until these herds have become classified brucellosis negative as defined in Regulation 17 of the Livestock Sanitary Board. Cattle in open range country shall be worked at a time to correspond to the normal procedure for handling such cattle.
B. Evidence of infection includes finding one or more reactors to an official brucellosis agglutination test on animals bred on the farm, at livestock auction market, at a slaughter establishment or concentration point, or upon official report of a positive brucellosis milk ring test of a dairy herd.
C. When the known infected herds in any parish have been reduced to five percent or less of the total number of herds in the parish, as determined by the latest official Census of Agriculture published by the United States Department of Commerce, Bureau of Census, the Livestock Sanitary Board shall have the authority to require a complete test of any herd in the parish which has had less than fifteen percent of the adult cattle officially tested within the last three years.
Defendant contends that plaintiff failed to meet the following statutory requirements : that plaintiff failed to prove 1) that the male or female cattle slaughtered (# 709) was over eight months of age; 2) that Pitre owned cattle in a herd; and 3) that Pitre’s cattle had shown evidence of brucellosis infection. We have considered the third contention and found proof of brucellosis infection in cattle owned by defendant.
It has been established that the animal tagged was more than eight months old. Mr. Micelle testified that the animal tagged number 709 weighed 985 pounds. He further testified that such an animal could not possibly be classified as a calf. Dr. Cowart further testified that only cattle aged two years or older are tested and it was established that animal 709 was tested. Defendant introduced no evidence to rebut the testimony that the animal was more than eight months old. There is no manifest error in the holding that the tested animal was more than eight months old.
Pitre admits in paragraph nine of his answer that he currently owns cattle. Furthermore his counsel stipulated at Tr. 231 that Pitre refused to have his cattle tested for the reasons set forth in his answer— reasons which we are here considering. The admission and stipulation, when combined with the fact that Pitre had six head of cattle delivered to Micelle’s on July 28, 1971, and that he endorsed the check which paid for these cattle, establish that defendant has and continues to have cattle within his possession and control.
Defendant next alleges that plaintiff failed to prove the existence of a herd which was exposed to brucellosis infection. Pitre bases the need for this requirement upon the language in section 2221 added in the 1966 amendment. The term “in a herd” does not appear in prior versions of that statute. Pitre alleges that the intent of the legislature was to make the burden of proof under this statute more onerous, requiring plaintiff to prove the existence of the particular herd exposed to brucello-sis infection.
The 1966 revision of this statute was an extensive one. The inclusion of the term “in a herd” was by no means the only alteration given the statute. Nevertheless, we are bound to assume that the legislature attached significance to the inclusion of that phrase. We find that the most plausible explanation of its meaning is that where a cattleman owns or controls separate and distinct herds, he may not be compelled to test all his herds simply be *803 cause one herd was exposed to infection. In this case, the term “in a herd” would be of 'significance only if the cattleowner, Pitre, had two or more separate herds. This being the case, it would then be incumbent upon the cattleowner to establish the distinct nature of his herds.
Defendant’s version of the inclusion of the term is that the legislature intended that plaintiff must prove the very existence of a herd of cattle; the fact that a person has the ownership or control of a number of cattle is not significant. We find that to place such piecemeal significance upon every prepositional phrase is evasive, rather than determinative of legislative intent. In order to realistically determine legislative intent, our primary focus is to determine the overall effect of the statute.
We find the legislature intended to provide an effective program for the eradication of brucellosis, a cattle disease which, if unchecked, could result in a quarantine of Louisiana cattle from interstate commerce. Legislative recognition of the need for a procedure which will serve to maintain the viability of an important state industry should not be diluted by an unduly restrictive statutory interpretation. The legislature intended that the broadest latitude be given the Livestock Sanitary Board to conduct such examinations by authorizing their conduct even after a showing that cattle were only exposed to other brucellosis infected animals. It is unrealistic to suppose that the legislature on the one hand requires a minimal possibility of exposure to brucellosis as authorization for compulsory testing and on the other hand requires the Board to precisely delineate a herd before testing can be compelled.
Whatever interpretation is given this statute, we find that plaintiff has adequately proven that Pitre has one and only one herd from which the infected animal was taken. Dr. S. J. Liggin, a veterinary medical officer with the U.S. Department of Agriculture, testified that defendant admitted the existence of a herd of cattle, which herd was located in the woods on his land. At Tr. 230 Dr. Liggins testified that he talked to Pitre at his home to arrange for a date to make the test of Pitre’s herd . . but Mr. Pitre told us definitely that we would not test his herd.” This admission by defendant occurred after he had been notified by the Livestock Sanitary Board that he must submit his cattle to an inspection. At Tr. 234 Dr. Liggins further testified that defendant admitted having . . cattle in the woods.” These admissions of a party may properly be introduced against him. See Wigmore on Evidence, § 1048(3) “. it is plain that the probative reason why a party-opponent’s utterance is sought to be used against him is that it exhibits an inconsistency with his present claim, thus tending to throw doubt upon it .” The credibility of Dr. Liggin was not assailed, and there does not appear on the record an apparent motive on his part to falsify his answer.
We therefore conclude that defendant has admitted to the existence of one herd. Pitre has introduced no evidence of his ownership or control of two or more herds which would tend to rebut his own admission. There is no manifest error in the holding that plaintiff has successfully proven the existence of a herd which has shown evidence of brucellosis infection.
Finally, Pitre alleges that the statute, as written, is unconstitutional in that it amounts to an unlawful delegation of legislative authority. More specifically, it is alleged that LSA-R.S. 3:2223 rests arbitrary discretion in the Livestock Sanitary Board to promulgate rules and regulations without adequate legislative guidelines for the exercise of that authority. Defendant relies upon Ezell v. City-Parish Plumbing Board of Baton Rouge, 234 La. 441, 100 So.2d 464 (1958), in which an ordinance, similar in wording to the statute challenged here, establishing a Plumbing *804 Board, was declared unconstitutional. To the same effect was State v. Morrow, 231 La. 572, 92 So.2d 70 (1956), which held a similarly worded statute an unconstitutional surrender of legislative power.
Comment upon the merits of such an allegation is unnecessary. Pitre has not been affected by the authority exercised by the Livestock Sanitary Board pursuant to LSA-R.S. 3:2223, and thus does not have standing to complain of the statute’s operation. Plaintiff here seeks only to compel compliance with the terms of LSA-R.S. 3:2221. The only regulation of the Livestock Sanitary Board possibly affecting Pitre in this action is Regulation 17, which defines “Brucellosis Infected, Exposed and Negative Herds.” The existence and content of Regulation 17 is specifically authorized by express mention of it in LSA-R.S. 3:2221 (A). By implying that this regulation must specifically contain a definition of “brucellosis negative,” the legislature has established a specific guideline for its content. “Brucellosis negative” is a term capable of scientific definition and was felt by the legislature to be one best handled by experts skilled in the detection, treatment, and eradication of the cattle disease. To provide more definite standards for the content of that regulation would defeat the very purpose of the existence of the Livestock Sanitary Board. Pitre thus does not have standing to challenge the constitutionality of the legislative delegation of authority, since the one regulation he may be affected by does contain an adequate legislative guideline.
The trial court judgment is affirmed at defendant’s costs.
Affirmed.
CULPEPPER, J., dissents and assigns written reasons.